NO. 07-01-0050-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



JANUARY 4, 2002



______________________________




ARAMARK HEALTHCARE SUPPORT SERVICES, INC.,





d/b/a METHODIST HOSPITAL CAFETERIA AND FOOD SERVICE, APPELLANT



V.



WILDA WISDOM, APPELLEE


 


_________________________________



FROM THE 72ND DISTRICT COURT OF LUBBOCK COUNTY;


 

NO. 98-501,815; HONORABLE BLAIR CHERRY, JUDGE



_______________________________



Before BOYD, C.J., and QUINN and REAVIS, JJ.

 Appellant Aramark Healthcare Support Services, Inc., d/b/a Methodist Hospital
Cafeteria and Food Service Inc. (Aramark) appeals a judgment following a jury trial that
appellee Wilda Wisdom recover $198,634.37 from Aramark as her damages following a
slip and fall accident on the premises of Aramark. By six issues, Aramark contends that
(1) the trial court abused its discretion in allowing a nurse to give expert testimony that the
medical expenses incurred were reasonable, (2) the trial court abused its discretion in
allowing a nurse to give expert testimony that the medical expenses were necessarily
incurred as a result of the occurrence, (3) the evidence was insufficient to support the
jury's finding that the medical treatment given and the expenses incurred were necessary
as a result of the occurrence, (4) the evidence was insufficient to support the jury's findings
that the condition of the premises posed an unreasonable risk of harm, (5) the evidence
was insufficient to support the jury's finding that Aramark knew or should have known of
the condition, (6) the trial court abused its discretion in denying the motion to remit
damages because Wisdom's pleadings do not support the jury's award of damages. 
Based upon the rationale expressed herein, we reverse and remand in part and affirm in
part.

 On March 11, 1997, Wisdom sustained injuries when she fell in a cafeteria operated
by Aramark while visiting her husband at Methodist Hospital. In addition to housing a
cafeteria, the facility also includes other food service facilities, i.e. Burger King, Chick Fil-A,
pizza, and a salad bar. When she entered the food service area, Wisdom walked through
the area to survey the choices of food. After walking twice by the food service outlets and
a cardboard advertisement sign (1) near the salad bar, Wisdom selected an entree. As she
was walking to the checkout counter at the opposite end of the cafeteria area, she tripped
on the cardboard sign that had fallen on the floor near the salad bar. Wisdom suffered
injuries to her elbow and back causing her to incur medical expenses in excess of
$100,000 and to miss almost a year of work. 

 By its first issue, Aramark contends that the trial court abused its discretion in
allowing a nurse to give expert testimony that the medical expenses incurred were
reasonable, and by its second issue, it contends that the trial court abused its discretion
in allowing a nurse to give expert testimony that the medical expenses were necessarily
incurred as a result of the occurrence in question. 

 In order to preserve a complaint for appellate review, a party must distinctly specify
an objection to the trial court. Tex. R. Evid. 103(a)(1); Tex. R. App. P. 33.1(a); St. Paul
Surplus Lines Ins. Co. v. Dal-Worth Tank Co., 917 S.W.2d 29, 45 (Tex.App.--Amarillo
1995, aff'd in part and rev'd in part, 974 S.W.2d 51 (Tex. 1998)). The purpose of an
objection is two-fold: (1) to notify the trial judge and the other party of the complaint; and
(2) to preserve the complaint for appellate review. See Wilkerson v. Pic Realty Corp., 590
S.W.2d 780, 782 (Tex.Civ.App.--Houston [14th Dist.] 1979, no writ). Because Aramark's
brief does not provide a reference to the record where it presented its objection to the trial
court as required by Texas Rules of Appellate Procedure 38.1(f) and (h), we will examine
the portion of the record which contains the testimony of Nurse Wintroath, according to the
reference provided by counsel during oral argument.

 Q. (By Mr. Simpson). I want to show you what has been marked as Plaintiff's
Exhibit Number 1 and ask you if you recognize that.


 A. I do.


 Q. And would you tell the ladies and gentlemen of the jury what that is?


 A. This is a list of or a summary of bills that have been accrued by Ms.
Wisdom since her injury and-bills.


 Q. All right. And the charges that are reflected there, did you see bills that
match up with those charges?


* * *



 Mr. Whiteside: Well, I don't think she-I don't think a nurse practitioner or a
case manager is qualified to render a medical decision. She can testify,
perhaps, as to the reasonableness of the bills, but can't testify to whether or
not the bills were made necessary or are necessary, as a result of the
treatment, to treat the particular condition in question, because she is not a
medical doctor. 


* * *



 Q. (By Mr. Simpson:) Ms. Wintroath, do you have an opinion as to whether
or not the charges that are reflected there are reasonable charges for the
Lubbock area?


 A. Yes, they are.


 Mr. Simpson: Your Honor, we will offer this exhibit later when Ms. Wisdom
testifies. We will lay the rest of the foundation. That is all we have of this
witness.


* * *



Cross Examination



* * *


 Q. But that is all you are saying. You are not saying these charges were
made necessary as a result of this accident?


 A. No, I am not saying that. 


* * *



 Q. . . .You are just saying he is going to bill for whatever he did?


 A. Yes. I am saying that the charges that I reviewed were reasonable
charges for the procedures that were done.


 Q. Okay. That is fair enough.


 


According to the above record, Aramark did not make any objection to the testimony of the
nurse that the charges for the medical procedures were reasonable. Indeed, it appears
that trial counsel agreed that she could testify as to the reasonableness of the medical fees
and expenses. Therefore, issue one presents nothing for review. Additionally, regarding
issue two, the record also demonstrates that the nurse clarified her testimony and
ultimately testified that she was not expressing any opinion as to medical necessity, which
prompted Aramark's counsel's response, "[t]hat is fair enough." Therefore issue two
presents nothing for review, and accordingly, issues one and two are overruled. 

 By issue three, Aramark contends that the evidence was insufficient to support the
jury's finding that the medical treatment given and expenses incurred were necessary as
a result of the occurrence. (2) In reviewing a factual insufficiency challenge, we must
consider and weigh all the evidence in support of the jury finding and set it aside only if it
is so contrary to the overwhelming weight of the evidence as to be manifestly unjust. Pool
v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986); Williams v. Gaines, 943 S.W.2d 185,
191 (Tex.App.--Amarillo 1997, writ denied). As an appellate court we cannot retry the case
or otherwise substitute our judgment for that of the trier of fact. Maritime Overseas Corp.
v. Ellis, 971 S.W.2d 402, 407 (Tex. 1998), cert. denied, 525 U.S. 1017, 119 S. Ct. 541. 142
L. Ed.2d 450 (1998); see also Mohnke v. Greenwood, 915 S.W.2d 585, 589
(Tex.App.-Houston [14th Dist.] 1996, no writ). In our review, we must first consider, weigh,
and examine all of the evidence which supports and which is contrary to the jury's
determination. Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989).

 Because Aramark did not call any witnesses during the trial and did not introduce
any evidence that the medical treatment given and the expenses incurred were not
necessary as a result of the occurrence, the jury was not required to weigh conflicting
evidence. Evidence supporting the jury verdict comes from several sources. First, during
his examination of Nurse Wintroath, counsel for Wisdom told the judge that he would offer
exhibit one, which the nurse referenced in her testimony, during the examination of
Wisdom. At the conclusion of Wisdom's testimony, the record shows the following:

 Mr. Simpson: . . . At this time, Your Honor, after the testimony of Ms.
Wintroath, Ms. Wisdom, and Dr. Johnson, we would offer Plaintiff's Exhibit
Number 1 into evidence, which is our bills.


* * *



 Mr. Whiteside: My concern has been, for example, Judge, that Dr. Naga
Bushan, M.D., is listed, that he treated her from 2/3/98 to 7/6 of 2000 for
$6,043, and we haven't heard anything about Dr. Bushan.


 And I have got - I got - I guess, if you could just give me some time on this
. . . . In other words, I don't think I have heard any testimony about the
relationship between anything Dr. Bushan did and this injury. . . . Could we
have some time to resolve this?


 * * *



 The Court: Is there any place-evidence with regard to Dr. Bushan?


 Mr. Simpson: We will clean that up. If it is not related, we will take it out.


 The Court: All right. Subject to that, we will admit it, but I think, perhaps,
maybe the first thing in the morning, we can do that. 


 Mr. Simpson: And one other thing, Your Honor, I would like to offer into
evidence Plaintiff's Exhibit Number 7, which is the letter that Dr. Johnson
wrote to us. I think I am on 7.


 The Court: Yes.


 Mr. Whiteside: No objection.


 The Court: It will be admitted.





Then, when trial commenced the next morning, the record shows that exhibit one, as
modified was admitted into evidence.


 Mr. Simpson: Also, with regard to Dr. Bushan's bills that were in question, we
took those out of our index.


 The Court: All right. And that solves Mr. Whiteside's objection?


 Mr. Whiteside: Yes, sir.





 Plaintiff's exhibit one, as modified to satisfy counsel's objection, was a list of hospital
and physicians' services and charges for services rendered to Wisdom, totaling
$112,523.11. Wintroath testified about the reasonableness of the fees and charges. By
his letter of December 6, 1999, which was admitted into evidence without objection, Dr.
Johnson expressed his opinion that, after reviewing his chart, the fall of March 11 was a
direct cause of the injuries which prompted Wisdom's surgeries. Moreover, Dr. Johnson,
testifying by deposition, stated that the surgeries by Dr. George and Dr. Gill were a direct
result and were necessary. Considering the summary of the medical services and
expenses described in exhibit one along with Dr. Johnson's letter and testimony, we
conclude that the jury's finding is not so contrary to the overwhelming weight of the
evidence as to be manifestly unjust. Issue three is overruled.

 By its fourth and fifth issues, Aramark contends that the evidence was insufficient
to support the jury's finding that the condition of the premises posed an unreasonable risk
of harm and that it knew or should have known of the condition. We disagree. By its
arguments Aramark contends that there is no evidence to support the jury findings on these
two issues. However, because Aramark adopts the factual sufficiency standard of review
set out in its third issue, we will not consider the issues as a challenge to the legal
sufficiency.

 The evidence on these issues is not conflicting because Aramark did not introduce
any evidence that the condition of the premises did not pose an unreasonable risk of harm
or that Aramark did not know or should not have known of the condition of the premises.
The sign was introduced into evidence and described as a man-sized character, which was
free-standing and not affixed to a wall or otherwise secured to prevent it from being
knocked over by visitors to the cafeteria. Joann Gonzales, a cashier at the cafeteria,
testified that the sign had been knocked over before the incident and that the fallen sign
would be dangerous to someone carrying a tray. She also testified that before Wisdom fell,
she called over the intercom for someone to come and pick up the sign but Wisdom fell
before it was moved. Although uncertain, Gonzales had a vague recollection that Wisdom
may have brushed the sign while making her food selection causing the sign to fall. 
However, according to her testimony, Wisdom stated that she did not knock the sign over
and did not see it on the floor.

 Ida Johnson, the manager of the cafeteria, went to the scene of the accident. She
testified that it appeared that someone had tripped over the sign and that if it was on the
floor in the traffic pattern, the sign would represent a danger to the customers in the
cafeteria. There being no evidence to the contrary, we conclude that the evidence is not
so contrary to the overwhelming weight of the evidence as to be manifestly unjust. Issues
four and five are overruled.

 By their sixth issue, Aramark contends that the trial court abused its discretion in
denying the motion to remit damages because Wisdom's pleadings do not support the
amount of the jury award. We agree. Generally, a judgment for damages in excess of the
amount sought by the pleadings is error. See Tex. R. Civ. P. 301; Employers Ins. of
Wausau v. Schaefer, 662 S.W.2d 414, 419 (Tex.App.--Corpus Christi 1983, no writ). 
Wisdom's live pleadings requested only $105,000 in past medical expenses, but the jury
awarded $112,523.11. Accordingly, the trial court should not have rendered judgment for
an amount in excess of what Wisdom requested in her trial pleadings. Picon Transp.,Inc.
v. Pomerantz, 814 S.W.2d 489, 491 (Tex.App.-Dallas 1991, writ denied). The judgment
for past medical expenses in excess of the $105,000 sought by Wisdom is erroneous, and
the trial court erred in denying Aramark's motion for remittitur. Aramark's sixth issue is
sustained. 

 Accordingly, we reverse that portion of the judgment awarding Wisdom recovery for
past medical and hospital care in excess of $105,000, and the cause is remanded to the
trial court for recomputation of the total award, including prejudgment and postjudgment
interest; in all other respects, the judgment is affirmed.


 Don H. Reavis

 Justice



Do not publish.


1. The sign was a full size replica of a Star Wars character advertising the Star Wars
Trilogy and Lays Potato Chips held up by a wing, perpendicular to image, running along
the back side almost the entire length and protruding out several inches from the flat
surface.
2. By its argument, Aramark only challenges the factual sufficiency of the evidence.



ly sufficient to support Appellant’s
conviction; and (5) whether trial counsel rendered ineffective assistance in failing to
subpoena Harold Williams (“Johnny”).
Potential Issues
I. Prosecutor’s comments during voir dire on a defendant’s failure to testify
          During voir dire, the prosecutor commented:
I guess the basis of the question is, is there a way that I can get to that level
in a case proving to you all of the elements if you never hear from the
Defense? Or do you say, gosh, I’ve got to hear from him. I want to know his
side?
* * *
why wouldn’t somebody want to take the stand and talk about their case?
 
 
          At that moment, defense counsel objected based on the United States Constitution
and the prosecutor was asked to rephrase. He continued:
[w]hy would somebody choose to exercise their right? You understand it’s
not a definite prohibition. We don’t say you can’t take the stand. We say
you have the right to exercise. You can say, I don’t want to take the stand. 
Right?
 
Defense counsel again objected, and the trial court overruled the objection.
          A prosecutor’s comment that refers to an accused’s failure to testify violates the
accused’s Fifth Amendment right against self-incrimination. Griffin v. California, 380 U.S.
609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); Bustamante v. State, 48 S.W.3d 761, 765
(Tex.Crim.App. 2001). However, to violate that right, the offending language must be
viewed from the jury’s standpoint and the implication that the comment referred to the
defendant’s failure to testify must be clear. Bustamante, 48 S.W.3d at 764. It is not
sufficient that the language might be construed as an implied or indirect allusion. Id. The
test is whether the language used was manifestly intended or was of such a character that
the jury would necessarily and naturally take it as a comment on the defendant’s failure to
testify. Id. 
          Comments such as those from the prosecutor in the instant case, which occur prior
to testimony in the case being closed, cannot be held to refer to a failure to testify which
has not yet occurred. See Reynolds v. State, 744 S.W.2d 156, 160 (Tex.App.–Amarillo
1987) (citing McCarron v. State, 605 S.W.2d 589, 595 (Tex.Crim.App. 1980)). Because
the comments by the prosecutor were made during voir dire, he could not have known
whether Appellant was going to testify. See McCary v. State, 477 S.W.2d 624, 627
(Tex.Crim.App. 1972). We agree with counsel’s assessment of this issue.
II. Appellant’s DNA sample was properly seized and admitted into evidence
          While Appellant was in jail, samples of his DNA were seized pursuant to a search
warrant for “personal property.” Trial counsel filed a motion to quash alleging that fluids,
saliva, and blood are not “personal property” that may properly be seized pursuant to
chapter 18 of the Texas Code of Criminal Procedure. Article 18.02 of the Code authorizes
a search warrant for “property” and also for “items.” See id. at (1) and (10). Although it
may have been more appropriate to describe the fluids as “items,” the statute authorizes
seizure of either as evidence. The search warrant’s reference to Appellant’s fluids as
“property” rather than “items” did not affect the adequacy of the description or otherwise
render the warrant invalid. See Falco v. State, No. 03-08-00206-CR, 2009 WL 349141,
at *3 (Tex.App.–Austin Feb. 11, 2009, no pet. h.). We agree with counsel that the seizure
of Appellant’s fluids pursuant to a valid search warrant presents no reversible error.
III. State’s Exhibit 6 was properly admitted
          State’s Exhibit 6 contains, among other medical records of the victim, the SANE’s
records of the victim’s forensic examination. The custodian of the medical records
executed an affidavit authenticating the records, but she did not testify. Appellant objected
during SANE Livermore’s testimony to admission of the exhibit because it contained
medical records that were not part of the SANE examination and the proper predicate had
not been laid. The documents were not filed with the trial court clerk although counsel
acknowledged he had reviewed them pursuant to the State’s open file policy. When
questioned by trial counsel on voir dire, Livermore acknowledged she was the custodian
of that portion of the medical records relating to the SANE examination but not the
custodian of the remaining medical records. 
          The predicate for the business records exception to the hearsay rule may be
established either by the custodian of the records or another qualified witness. (Emphasis
added). Tex. R. Evid. 803(6). See Williams v. State, 176 S.W.3d 476, 484
(Tex.App.–Houston 2004, no pet.). The rule does not require that the witness be the
person who made the record. We agree with counsel that the trial court did not abuse its
discretion in admitting all the medical records contained in State’s Exhibit 6 pursuant to the
business records exception.
IV. Legal and factual sufficiency of the evidence
          Evidence is legally insufficient if, when viewed in a light most favorable to the
prosecution, a rational trier of fact could not have found each element of the offense
beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318, 99 S.Ct. 2781, 2789,
61 L.Ed.2d 560, 573 (1979); Laster v. State, No. PD-1276-07, 2009 WL 80226, at *2
(Tex.Crim.App. 2009). In conducting our factual sufficiency review, we must defer to the
jury’s findings and we cannot conclude that the conviction is factually insufficient simply
because we might disagree with the jury’s verdict. See Laster, 2009 WL 80226, at *2; See
also Watson v. State, 204 S.W.3d 404, 416-17 (Tex.Crim.App. 2006).
          As charged, the State was required to prove that Appellant intentionally and
knowingly sexually assaulted the victim by causing penetration of the victim’s anus with his
sexual organ without her consent. Tex. Penal Code Ann. § 22.011(a)(1)(A). Captain and
Wipkey both testified that they witnessed Appellant having sex with the victim while she
was unconscious and “lifeless.” Wipkey testified that she observed Daily’s child sleeping
at the top of the bed while the victim was laying toward the bottom of the bed with
Appellant standing up and holding her legs up. Captain testified there was “no doubt”
about what he saw and also described Appellant having sex with the victim while propping
her legs up in the air. There was also testimony that the victim had not shown Appellant
any affection that evening. The victim testified that she had no relationship with Appellant
and she did not consent to having sex with him. Additionally, the rectal swab from the rape
exam confirmed that Appellant was a contributor of DNA.
          The only witness to testify for the defense during guilt/innocence was Appellant’s
girlfriend with whom she shared a child. According to her testimony, at approximately 3:30
or 4:00 a.m., she drove to Daily’s house to pick up Appellant and his friends. When she
arrived, they were sitting on the front porch drinking with Captain. She did not enter the
house and did not see Appellant enter either. She denied calling Daily several days later
to ask her to convince the victim to drop the charges and claimed she did not become
aware of the charges until months later.
          During closing arguments, trial counsel theorized that Captain was the perpetrator
and that after he assaulted the victim, she became immobile and he and his friends
“panicked” and called the police. Based on the standards of review, however, we agree
with counsel that the evidence is legally and factually sufficient to support Appellant’s
conviction.
V. Ineffective assistance of counsel



          Harold Williams (“Johnny”), one of Appellant’s friends who was at Daily’s house
during the incident, was not subpoenaed to testify. This, Appellant urges, denied him the
right to effective assistance of counsel. We review a claim of ineffective assistance of
counsel under the standard set out in Strickland v. Washington, 466 U.S. 668, 104 S.Ct.
2052, 80 L.Ed.2d 674 (1984); Ex parte Ellis, 233 S.W.3d 324, 330 (Tex.Crim.App. 2007). 
          Although a motion for new trial was filed, ineffective assistance of counsel was not
alleged and no hearing was held on the motion. Where the alleged dereliction is an error
of omission de hors the record rather than commission revealed in the trial record,
collateral attack may be the vehicle by which to develop a detailed record of the alleged
ineffectiveness. See Freeman v. State, 125 S.W.3d 505, 506-07 (Tex.Crim.App. 2003). 
          Initially, we note that trial counsel zealously represented Appellant. From voir dire
through the punishment phase, counsel made numerous, detailed objections and also
conducted vigorous cross-examination of the State’s witnesses. There is nothing in the
record to demonstrate what Williams’s testimony would have been or how it would have
benefitted Appellant. We will not speculate as to trial counsel’s strategy in the face of a
silent record. See Stultz v. State, 23 S.W.2d 198, 208 (Tex.App.–Houston [14th Dist.]
2000, pet. ref’d). Given the totality of the representation by trial counsel rather than an
isolated act of omission, we agree with appellate counsel that a claim of ineffective
assistance of counsel has no merit.
           We have independently examined the entire record to determine whether there are
any non-frivolous issues which might support the appeal. See Penson v. Ohio, 488 U.S.
75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988); In re Schulman, 252 S.W.3d at 409; Stafford
v. State, 813 S.W.2d 503, 511 (Tex.Crim.App. 1991). We have found no such issues. 
See Gainous v. State, 436 S.W.2d 137 (Tex.Crim.App. 1969). After reviewing the record
and counsel’s brief, we agree with counsel that there are no plausible grounds for appeal. 
See also Bledsoe v. State, 178 S.W.3d 824 (Tex.Crim.App. 2005).
          Accordingly, counsel's motion to withdraw is granted and the trial court’s judgment
is affirmed. 
                                                                           Per Curiam

                                                                                                                                    

Do not publish.