John Ray Gonzales

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-332-CR

JOHN RAY GONZALES APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

A jury convicted Appellant John Ray Gonzales of murder and assessed his punishment at life imprisonment in the Institutional Division of the Texas Department of Criminal Justice.  The trial court sentenced him accordingly. Appellant brings two points on appeal, challenging the legal and factual sufficiency of the evidence and the trial court’s ruling on his objection to the State’s jury argument.  Because we hold that the evidence is both legally and factually sufficient and because the trial court did not err in overruling Appellant’s objection to the State’s jury argument, we affirm the trial court’s judgment. 

Background Facts

Appellant was indicted, tried, and convicted for the murder of Dylan McGaughy, a three-year-old boy.  Appellant testified at trial that Dylan had thrown a tantrum.  Appellant told investigators that during the tantrum he had lifted Dylan and squeezed him in his arms, and that he then “slammed” Dylan on the floor, causing his head to roll backward and hit the floor.  Appellant then claimed that he had intentionally performed a “wrestling move” on Dylan by dropping on him with his elbow as the toddler lay on the floor.  Appellant stated that he unintentionally dropped too much weight on the child’s stomach.  

The medical examiner’s report showed that Dylan suffered blunt force trauma to the abdomen, which crushed his liver and bowels against his spine.  A large laceration on the child’s liver, perforations of his bowels, and internal bleeding resulted from the blow.  The child also suffered from an undetermined number of blows to the back of his head, causing hemorrhaging in his skull.

Legal and Factual Sufficiency of the Evidence

In his second point on appeal, Appellant argues that the evidence is legally and factually insufficient to show that he intentionally or knowingly caused the child’s death.  Consequently, he claims that at most he could be guilty only of acting recklessly.

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to 
the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
(footnote: 2)  This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.
(footnote: 3)  When performing a legal sufficiency review, we may not sit as a thirteenth juror, re-evaluating the weight and credibility of the evidence and, thus, substituting our judgment for that of the fact finder.
(footnote: 4)
 In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.
(footnote: 5)  Evidence is factually insufficient if it is so weak as to be clearly wrong and manifestly unjust or the adverse finding is against the great weight and preponderance of the available evidence.
(footnote: 6)  Therefore, we must determine whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the 
verdict
, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof.
(footnote: 7)  In performing this review, we are to give due deference to the fact finder’s determinations.
(footnote: 8)  We may not substitute our judgment for that of the fact finder’s.
(footnote: 9)  Consequently, we may conclude that the evidence is factually insufficient only where necessary to prevent manifest injustice.
(footnote: 10)
 To make a determination of factual insufficiency, a complete and detailed examination of all the relevant evidence is required.
(footnote: 11)  A proper factual sufficiency review must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.
(footnote: 12)
 The medical examiner testified that the child’s cause of death consisted of “blunt force trauma of the abdomen and head.”  The blows to the back of the child’s head caused profound hemorrhaging in his skull, resulting in severe swelling of the brain.  The medical examiner reported hemorrhaging under the scalp in at least two separate areas of the back of the child’s head, as well as damage to frontal areas of his scalp and head.  The medical examiner testified that the child’s head must have been slammed or struck “at least two times, if not more.”  The head injuries were consistent with being slammed against a surface or struck in the head with a closed fist.

The medical examiner determined that separate blunt force trauma to the abdomen crushed the child’s liver and bowel against his spine, resulting in a ”large laceration, a deep gauge laceration” of his liver, perforations of and contusions to his bowels, and internal bleeding.  If left untreated, the injuries to the child’s liver and bowel were sufficient to cause his death.  The medical examiner concluded that based upon the nature of his wounds, the child must have suffered “at least a couple of blows, if not more blows to the abdominal area.”  The medical examiner described the child’s injuries as “excruciatingly painful.”  He testified that it would have been “quite unlikely” for the child to have remained quiet, as Appellant claimed, after suffering such injuries.  The pain would have subsided only after the child had succumbed to his head injury and become unconscious.

The medical examiner’s testimony strongly impeached Appellant’s claim that he had struck a single accidental blow to the child’s abdomen, and that the child had struck his head when Appellant slammed him to the floor, hitting his buttocks first and then falling back and hitting his head.

Appellant described the child’s conduct after sustaining the injuries as consistent with constipation and a stomachache.  His description is completely contradicted by the medical examiner’s testimony.

Appellant’s own testimony is the only evidence suggesting that he did not intentionally or knowingly cause the child’s severe injuries.  Conflicting evidence was provided by the medical examiner’s testimony and his description of the physical evidence.  Additionally, the jury found that Appellant intentionally or knowingly committed or attempted to commit an act clearly dangerous to human life that did result in the child’s death.  

Appellant, however, does not point us to any evidence that conflicts with the jury’s determination.  Even by his own testimony, Appellant admitted that he picked the child up and squeezed his thoracic area, that he slammed him onto the floor, and that he performed a wrestling move on him.  The description of these actions performed by a seventeen-year-old man who was five feet eight inches or five feet nine inches in height and weighed one hundred ninety-five to two hundred pounds supports the jury’s verdict that Appellant intentionally or knowingly committed an act clearly dangerous to human life that resulted in the child’s death.

The jury, as the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given their testimony, was free to believe or disbelieve the testimony of any witness.  Its obligation was to reconcile conflicts in the testimony and to accept or reject any or all of the evidence.
(footnote: 13)  Conflicts in the evidence are properly resolved by the jury, and a mere conflict in evidence, without more, is not enough to render the evidence insufficient to support a verdict.
(footnote: 14)  

Applying the appropriate standards of review, we hold that the evidence is both legally and factually sufficient to support the jury’s verdict.  We overrule

Appellant’s second point on appeal.

Jury Argument

In his first point, Appellant complains that the trial court erroneously overruled his objection to the State’s improper jury argument.  
During the punishment phase of the trial, the prosecutor stated, “[C]ounsel told you Friday about all of the grief strickenness [sic] on the other side of this room.  Where is it?“ Defense counsel then objected that the argument was a comment on Appellant’s failure to testify, and the trial court overruled the objection.

To determine if a prosecutor’s comment violated article 38.08 of the Texas Code of Criminal Procedure and constituted an impermissible reference to an accused’s failure to testify, we must consider whether the language used was manifestly intended or was of such a character that the jury would naturally and necessarily consider it to be a comment on the defendant’s failure to testify.
(footnote: 15)  The offending language must be viewed from the jury’s standpoint, and the implication that the comment referred to the accused’s failure to testify must be clear.
(footnote: 16)  A mere indirect or implied allusion to the defendant’s failure to testify does not violate the accused’s right to remain silent.
(footnote: 17)
 We must examine the complained-of argument in its context.  Appellant’s trial counsel argued that the child’s mother was having to deal with her own grief regarding her son’s death, and that she also had to deal with the fact that her own family had shunned her because she supported Appellant.  Indeed, she had married him after her son’s death.  Counsel argued: 

You saw the testimony.  You can feel the emotion.  You can see the family in two different sides of the courtroom, and you see where Shelly is.  Shelly is over there behind her husband because she supports him in this case.  She grieves the loss of her child, but whether or not it’s a crime, it’s not something that she believed is the case.  

Later in the punishment phase, Shelly McGaughy, the child’s mother, testified again for the defense, as did Appellant’s sister.  As the State points out, both pleaded for leniency toward Appellant, and neither discussed the child’s pain and suffering, nor the pain and suffering family members may have felt from his death.

Appellant’s counsel had referred to those family members who supported Appellant by indicating the portion of the room in which they were sitting; that is, by indicating the “two different sides of the court room.”

The State’s counsel argued in response,

That’s a life case.  I submit to you he is anxious to go home and raise another [child].  Where—I mean, counsel told you Friday about all of the grief strickenness [sic] on the other side of this room.

Where is it?

It’s about him and leniency.

This is what happened to Dylan.

It was this argument to which Appellant objected as constituting a comment on Appellant’s failure to testify.  After the trial court overruled Appellant’s objection, counsel for the State continued his argument:

What Vanessa and Shelly asked you to do was be lenient, and Counsel suggested Friday that this family over here was just as torn up.  

Here is what happened.  What is it worth?

This is about Dylan.  It’s about Dylan’s life.

Examining the complained of argument in its context, it is clear that the State’s counsel was referring not to Appellant’s lack of “grief strickenness,” but to that of those family members who supported Appellant.  Consequently, the argument was not a comment on Appellant’s failure to testify.  We overrule Appellant’s first point on appeal.

Having overruled both of Appellant’s points, we affirm the trial court’s judgment.

LEE ANN DAUPHINOT

JUSTICE

PANEL B: DAUPHINOT, GARDNER, and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P. 
47.2(b)

DELIVERED:  June 26, 2003

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Jackson v. Virginia, 
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Burden v. State
, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001).

3:
Jackson, 
443 U.S. at 319, 99 S. Ct. at 2789.

4:
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).

5:
Johnson v. State
, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); 
Clewis v. State
, 922 S.W.2d 126, 129, 134 (Tex. Crim. App. 1996).

6:
Johnson
, 23 S.W.3d at 11. 

7:
Id.
 

8:
Id.
 at 8-9; 
Clewis, 
922 S.W.2d at 136.

9:
Johnson
, 23 S.W.3d at 12.

10:
Id.
 at 9, 12; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).

11:
Johnson
, 23 S.W.3d at 12.

12:
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

13:
Adelman v. State
, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992).

14:
Upton v. State
, 853 S.W.2d 548, 552 (Tex. Crim. App. 1993).

15:
Tex. Code Crim. Proc. Ann.
 art. 38.08 (Vernon 1979); 
see Bustamante v. State
, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001); 
Fuentes v. State
, 991 S.W.2d 267, 275 (Tex. Crim. App.), 
cert. denied
, 528 U.S. 1026 (1999).

16:
Bustamante
, 48 S.W.3d at 765; 
Swallow v. State
, 829 S.W.2d 223, 225 (Tex. Crim. App. 1992).

17:
Patrick v. State,
 906 S.W.2d 481, 490-91 (Tex. Crim. App. 1995), 
cert. denied
, 517 U.S. 1106 (1996).