John Ray Gonzales






COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO. 2-02-332-CR
 
JOHN RAY GONZALES
                                                           APPELLANT
V.
THE STATE OF TEXAS
                                                              
STATE
------------
FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY
------------
MEMORANDUM OPINION(1)
------------
A jury convicted Appellant John Ray Gonzales of murder and assessed his
punishment at life imprisonment in the Institutional Division of the Texas
Department of Criminal Justice. The trial court sentenced him accordingly.
Appellant brings two points on appeal, challenging the legal and factual
sufficiency of the evidence and the trial court's ruling on his objection to the
State's jury argument. Because we hold that the evidence is both legally and
factually sufficient and because the trial court did not err in overruling
Appellant's objection to the State's jury argument, we affirm the trial court's
judgment.
Background Facts
Appellant was indicted, tried, and convicted for the murder of Dylan McGaughy,
a three-year-old boy. Appellant testified at trial that Dylan had thrown a
tantrum. Appellant told investigators that during the tantrum he had lifted
Dylan and squeezed him in his arms, and that he then "slammed" Dylan
on the floor, causing his head to roll backward and hit the floor. Appellant
then claimed that he had intentionally performed a "wrestling move" on
Dylan by dropping on him with his elbow as the toddler lay on the floor.
Appellant stated that he unintentionally dropped too much weight on the child's
stomach.
The medical examiner's report showed that Dylan suffered blunt force trauma
to the abdomen, which crushed his liver and bowels against his spine. A large
laceration on the child's liver, perforations of his bowels, and internal
bleeding resulted from the blow. The child also suffered from an undetermined
number of blows to the back of his head, causing hemorrhaging in his skull.
Legal and Factual Sufficiency of the Evidence
In his second point on appeal, Appellant argues that the evidence is legally
and factually insufficient to show that he intentionally or knowingly caused the
child's death. Consequently, he claims that at most he could be guilty only of
acting recklessly.
In reviewing the legal sufficiency of the evidence to support a conviction,
we view all the evidence in the light most favorable to the verdict in order to
determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.(2) 
This standard gives full play to the responsibility of the trier of fact to
resolve conflicts in the testimony, to weigh the evidence, and to draw
reasonable inferences from basic facts to ultimate facts.(3) 
When performing a legal sufficiency review, we may not sit as a thirteenth
juror, re-evaluating the weight and credibility of the evidence and, thus,
substituting our judgment for that of the fact finder.(4)
In reviewing the factual sufficiency of the evidence to support a conviction,
we are to view all the evidence in a neutral light, favoring neither party.(5) 
Evidence is factually insufficient if it is so weak as to be clearly wrong and
manifestly unjust or the adverse finding is against the great weight and
preponderance of the available evidence.(6) 
Therefore, we must determine whether a neutral review of all the evidence, both
for and against the finding, demonstrates that the proof of guilt is so
obviously weak as to undermine confidence in the verdict, or the proof of guilt,
although adequate if taken alone, is greatly outweighed by contrary proof.(7) 
In performing this review, we are to give due deference to the fact finder's
determinations.(8)  We may not substitute
our judgment for that of the fact finder's.(9) 
Consequently, we may conclude that the evidence is factually insufficient only
where necessary to prevent manifest injustice.(10)
To make a determination of factual insufficiency, a complete and detailed
examination of all the relevant evidence is required.(11) 
A proper factual sufficiency review must include a discussion of the most
important and relevant evidence that supports the appellant's complaint on
appeal.(12)
The medical examiner testified that the child's cause of death consisted of
"blunt force trauma of the abdomen and head."  The blows to the
back of the child's head caused profound hemorrhaging in his skull, resulting in
severe swelling of the brain.  The medical examiner reported hemorrhaging
under the scalp in at least two separate areas of the back of the child's head,
as well as damage to frontal areas of his scalp and head.  The medical
examiner testified that the child's head must have been slammed or struck
"at least two times, if not more."  The head injuries were
consistent with being slammed against a surface or struck in the head with a
closed fist.
The medical examiner determined that separate blunt force trauma to the
abdomen crushed the child's liver and bowel against his spine, resulting in a
"large laceration, a deep gauge laceration" of his liver, perforations
of and contusions to his bowels, and internal bleeding.  If left untreated,
the injuries to the child's liver and bowel were sufficient to cause his death. 
The medical examiner concluded that based upon the nature of his wounds, the
child must have suffered "at least a couple of blows, if not more blows to
the abdominal area."  The medical examiner described the child's
injuries as "excruciatingly painful."  He testified that it would
have been "quite unlikely" for the child to have remained quiet, as
Appellant claimed, after suffering such injuries.  The pain would have
subsided only after the child had succumbed to his head injury and become
unconscious.
The medical examiner's testimony strongly impeached Appellant's claim that he
had struck a single accidental blow to the child's abdomen, and that the child
had struck his head when Appellant slammed him to the floor, hitting his
buttocks first and then falling back and hitting his head.
Appellant described the child's conduct after sustaining the injuries as
consistent with constipation and a stomachache.  His description is
completely contradicted by the medical examiner's testimony.
Appellant's own testimony is the only evidence suggesting that he did not
intentionally or knowingly cause the child's severe injuries.  Conflicting
evidence was provided by the medical examiner's testimony and his description of
the physical evidence.  Additionally, the jury found that Appellant
intentionally or knowingly committed or attempted to commit an act clearly
dangerous to human life that did result in the child's death.
Appellant, however, does not point us to any evidence that conflicts with the
jury's determination. Even by his own testimony, Appellant admitted that he
picked the child up and squeezed his thoracic area, that he slammed him onto the
floor, and that he performed a wrestling move on him.  The description of
these actions performed by a seventeen-year-old man who was five feet eight
inches or five feet nine inches in height and weighed one hundred ninety-five to
two hundred pounds supports the jury's verdict that Appellant intentionally or
knowingly committed an act clearly dangerous to human life that resulted in the
child's death.
The jury, as the exclusive judge of the facts, the credibility of the
witnesses, and the weight to be given their testimony, was free to believe or
disbelieve the testimony of any witness. Its obligation was to reconcile
conflicts in the testimony and to accept or reject any or all of the evidence.(13)
Conflicts in the evidence are properly resolved by the jury, and a mere conflict
in evidence, without more, is not enough to render the evidence insufficient to
support a verdict.(14)
Applying the appropriate standards of review, we hold that the evidence is
both legally and factually sufficient to support the jury's verdict.  We
overrule Appellant's second point on appeal.
Jury Argument
In his first point, Appellant complains that the trial court erroneously
overruled his objection to the State's improper jury argument. During the
punishment phase of the trial, the prosecutor stated, "[C]ounsel told you
Friday about all of the grief strickenness [sic] on the other side of this room.
Where is it?"  Defense counsel then objected that the argument was a
comment on Appellant's failure to testify, and the trial court overruled the
objection.
To determine if a prosecutor's comment violated article 38.08 of the Texas
Code of Criminal Procedure and constituted an impermissible reference to an
accused's failure to testify, we must consider whether the language used was
manifestly intended or was of such a character that the jury would naturally and
necessarily consider it to be a comment on the defendant's failure to testify.(15) 
The offending language must be viewed from the jury's standpoint, and the
implication that the comment referred to the accused's failure to testify must
be clear.(16)  A mere indirect or implied
allusion to the defendant's failure to testify does not violate the accused's
right to remain silent.(17)
We must examine the complained-of argument in its context. Appellant's trial
counsel argued that the child's mother was having to deal with her own grief
regarding her son's death, and that she also had to deal with the fact that her
own family had shunned her because she supported Appellant.  Indeed, she
had married him after her son's death.  Counsel argued:

 You saw the testimony. You can feel the emotion. You can see the family in
 two different sides of the courtroom, and you see where Shelly is. Shelly is
 over there behind her husband because she supports him in this case. She
 grieves the loss of her child, but whether or not it's a crime, it's not
 something that she believed is the case.

Later in the punishment phase, Shelly McGaughy, the child's mother, testified
again for the defense, as did Appellant's sister. As the State points out, both
pleaded for leniency toward Appellant, and neither discussed the child's pain
and suffering, nor the pain and suffering family members may have felt from his
death.
Appellant's counsel had referred to those family members who supported
Appellant by indicating the portion of the room in which they were sitting; that
is, by indicating the "two different sides of the court room."
The State's counsel argued in response,

 That's a life case. I submit to you he is anxious to go home and raise
 another [child]. Where--I mean, counsel told you Friday about all of the grief
 strickenness [sic] on the other side of this room.
 Where is it?
 It's about him and leniency.
 This is what happened to Dylan.

It was this argument to which Appellant objected as constituting a comment on
Appellant's failure to testify. After the trial court overruled Appellant's
objection, counsel for the State continued his argument:

 What Vanessa and Shelly asked you to do was be lenient, and Counsel
 suggested Friday that this family over here was just as torn up.
 Here is what happened. What is it worth?
 This is about Dylan. It's about Dylan's life.

Examining the complained of argument in its context, it is clear that the
State's counsel was referring not to Appellant's lack of "grief
strickenness," but to that of those family members who supported Appellant.
Consequently, the argument was not a comment on Appellant's failure to testify.
We overrule Appellant's first point on appeal.
Having overruled both of Appellant's points, we affirm the trial court's
judgment.
 
                                                           LEE
ANN DAUPHINOT
                                                           JUSTICE

PANEL B: DAUPHINOT, GARDNER, and WALKER, JJ.
DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: June 26, 2003

1. See Tex. R. App. P. 47.4.
2. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.
Ct. 2781, 2789 (1979); Burden v. State, 55 S.W.3d 608, 612 (Tex. Crim.
App. 2001).
3. Jackson, 443 U.S. at 319, 99 S. Ct. at 2789.
4. Dewberry v. State, 4 S.W.3d 735, 740 (Tex.
Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000).
5. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim.
App. 2000); Clewis v. State, 922 S.W.2d 126, 129, 134 (Tex. Crim. App.
1996).
6. Johnson, 23 S.W.3d at 11.
7. Id.
8. Id. at 8-9; Clewis, 922 S.W.2d at
136.
9. Johnson, 23 S.W.3d at 12.
10. Id. at 9, 12; Cain v. State, 958
S.W.2d 404, 407 (Tex. Crim. App. 1997).
11. Johnson, 23 S.W.3d at 12.
12. Sims v. State, 99 S.W.3d 600, 603 (Tex.
Crim. App. 2003).
13. Adelman v. State, 828 S.W.2d 418, 421 (Tex.
Crim. App. 1992).
14. Upton v. State, 853 S.W.2d 548, 552 (Tex.
Crim. App. 1993).
15. Tex. Code Crim. Proc. Ann. art. 38.08 (Vernon 1979); see
Bustamante v. State, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001); Fuentes
v. State, 991 S.W.2d 267, 275 (Tex. Crim. App.), cert. denied, 528
U.S. 1026 (1999).
16. Bustamante, 48 S.W.3d at 765; Swallow v.
State, 829 S.W.2d 223, 225 (Tex. Crim. App. 1992).
17. Patrick v. State, 906 S.W.2d 481, 490-91
(Tex. Crim. App. 1995),cert. denied, 517 U.S. 1106 (1996).