Victor **BUSTAMANTE**, Appellant,

v.

The **STATE** of Texas.

No. 1954–99.

Court of Criminal Appeals of Texas.

June 13, 2001.

Matthew R.DeKoatz, El Paso, for Appellant.

Karen L. Landinger, Asst. DA, El Paso, for State.

## OPINION

KEASLER, J., delivered the opinion of the Court in which KELLER, P.J., MEYERS, WOMACK, HERVEY, and HOLCOMB, J.J. joined.

In Victor Bustamante's murder trial, his attorney asked a State's witness what type of gangs were in Bustamante's neighborhood. When the State objected, the trial judge said "as soon as I hear from the defendant we'll get into it." We hold that the mere fact that this remark was made before Bustamante closed his case does not preclude it from being a comment on his failure to testify.

### Factual History

Close to midnight on Independence Day 1996, Arturo Chavez was at his mother's house drinking beer with his cousin David Avelar. Around 2:00 a.m. Chavez and Avelar left to buy more beer at the Good Time store. On their way back, they saw Bustamante out in his yard. An argument ensued between Avelar and Bustamante, and Bustamante asked Avelar and Chavez to leave. As they were leaving, Bustamante shot Avelar.

During trial, Bustamante attempted to elicit testimony that Avelar was a dangerous gang member that Bustamante feared. Bustamante argued that this evidence was relevant to show his state of mind. The first attempt to introduce this type of evidence occurred when Bustamante asked Chavez during cross-examination whether Avelar ran around town with a shotgun.

After the State's relevance objection, the following conversation took place outside the presence of the jury:

COURT: How is that relevant?

DEFENSE COUNSEL: Well, Your Honor, he knew it. Victor [Bustamante] knew about it. He knew—

COURT: Okay. Is Victor going to tell us that? Is Victor going to tell us about this? When I hear evidence that Victor knew about it, then you can get into it.

DEFENSE COUNSEL: Your Honor, it shows—if I can show that he carried a shotgun, if I can show that my client knew about it as part of the neighborhood and it was his reputation to carry a shotgun, then, Your Honor, it's relevant to my client's state of mind.

COURT: As soon as you show me your client knew about it, it will become relevant, and I'll let you put it on.

During Bustamante's second attempt to introduce this type of information, he was trying to ask Chavez's mother whether Chavez was a gang member. Again the State made a relevance objection. Again, outside the presence of the jury, Bustamante argued the following:

DEFENSE COUNSEL: Well, because since he was there with David Avelar and David Avelar was a gang member ... I think it goes to my client feeling threatened that both of them were there and that, you know he knew that—

COURT: Is your client going to get into how he felt threatened, if he didn't know it? See a lot of this that you're wanting to do I agree you can do, but you've got to put your client on. Otherwise, it's not—your client's mental state is not relevant unless you show it.

DEFENSE COUNSEL: Well, Your Honor, I certainly intend to show that he knew that he was there.

COURT: You can call him up.

DEFENSE COUNSEL: I'll do that. That's fine.

In Bustamante's third and final attempt, he asked a deputy sheriff what sort of gangs were in the area. Instead of approaching the bench again, the following took place in front of the jury:

STATE: Your Honor, I'm going to again object to relevance. He has yet to establish anything that relates to anything.

DEFENSE COUNSEL: It's going to the state of mind of the defendant.

COURT: Well, as soon as I hear the defendant, we'll get into it.

STATE: Then he can put his client on the stand and have him testify.

DEFENSE COUNSEL: Objection.

Then at the bench, out of the hearing of the jury, the following occurred:

DEFENSE COUNSEL: Judge, at this time I'd object to the Court making a comment on the defendant's rights in front of the jury, Fifth Amendment right, Constitutional right. I object to the Court doing that. I would ask—first of all, I'd like a ruling on that.

STATE: The Court was speaking to the prosecutor.

DEFENSE COUNSEL: No, it doesn't matter. The judge mentioned in front of the jury that: Once I hear from the defendant, then we'll get into it.

COURT: That's true ... You want me to instruct the jury on that?

DEFENSE COUNSEL: First of all, I'm raising an objection.

COURT: Sustained.

DEFENSE COUNSEL: Secondly, I ask you to please let the jury know to

disregard that last statement by the Court and by the prosecutor and any implication that it had. I'd ask for that now.

COURT: Okay.

DEFENSE COUNSEL: And, lastly, I would ask for a mistrial.

COURT: Your motion for mistrial will be denied.

The court then instructed the jury:

COURT: The jury is instructed to disregard any comment I made regarding the issue regarding the gang relevance after we hear from the defendant, that I may have said or the prosecutor may have said.

At the close of the State's case, Bustamante chose not to present any evidence and did not testify. The court's charge instructed the jury not to take Bustamante's failure to testify against him for any purpose whatsoever.

## Procedural History

On appeal, Bustamante challenged the trial judge's statement—"[w]ell, as soon as I hear from the defendant, we'll get into it"—arguing that it was a comment on Bustamante's failure to testify. Citing *McCarron v. State*,[1] the Court of Appeals stated that "[t]he established rule, if the prosecutor or a witness had made the comment, is that this is not a comment on the defendant's failure to testify, because there could not be a comment on a failure that had not yet occurred."[2] The Court of Appeals then held that this "established rule" does not apply to judges because judges are to "maintain an attitude of impartiality" and "their conduct carries special and heavy weight with jurors."[3] Subsequently, the Court of Appeals found that this comment was a direct reference to the defendant's failure to testify, that the instruction to disregard did not cure the error, and that Bustamante was harmed.

We granted the State's petition for discretionary review to address whether the Court of Appeals erred in restricting "the rule of *McCarron*" to witnesses and prosecutors.

## Failure to Testify—Legal Background

▇▇▇ Neither the trial judge nor the prosecutor can comment on the failure of an accused to testify.[4] Such a comment violates the privilege against self-incrimination and the freedom from being compelled to testify contained in the Fifth Amendment of the United States Constitution and Article I, § 10, of the Texas Constitution.[5] Just as it is improper for the State to argue from a defendant's silence, it is also improper for the trial judge to call attention to a defendant's silence.[6] As the United States Supreme Court has stated, "What the jury may infer given no help from the court is one thing. What it may infer when the court so solemnizes the

1. 605 S.W.2d 589 (Tex.Crim.App. [Panel Op.] 1980).

2. *Bustamante v. State*, No. 08–97–00008 CR, slip op. at 3–4 (Tex.App.—El Paso September 23, 1999) (not designated for publication).

3. *Id.* at 4.

4. *See Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *United States v. Haynes*, 573 F.2d 236 (5th Cir.1978), *cert. denied*, 439 U.S. 850, 99 S.Ct. 154, 58 L.Ed.2d 153 (1978); *Davis v. United States*, 357 F.2d 438 (5th Cir.1966), *cert. denied*, 385 U.S. 927, 87 S.Ct. 284, 17 L.Ed.2d 210 (1966); *Bird v. State*, 527 S.W.2d 891, 893 (Tex.Crim.App.1975).

5. *See id.*

6. *Davis*, 357 F.2d at 441.

silence of the accused into evidence against himself is quite another." [7]

▮ To violate the right against self-incrimination, the offending language must be viewed from the jury's standpoint and the implication that the comment referred to the defendant's failure to testify must be clear.[8] It is not sufficient that the language might be construed as an implied or indirect allusion.[9] The test is whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify.[10] In applying this standard, the context in which the comment was made must be analyzed to determine whether the language used was of such character.[11]

### Analysis of *McCarron*

▮ The Court of Appeals indicated that, according to *McCarron*, no comment made before the close of a defendant's case can ever be a comment on the failure to testify. The Court of Appeals found that this "established rule" does not apply to judges. The parties agree with the Court of Appeals that *McCarron* sets forth a bright-line rule regarding the timing of the comment. We disagree.

The timing of the comment in this case is similar to the timing of a comment in *Moore v. State*.[12] In *Moore,* during guilt-innocence, the defense attorney asked the examining doctor on cross-examination to read Moore's responses to questions Moore answered during a psychological battery test. There were 175 questions. The prosecutor asked if the responses could be limited and stated that these were "[t]he answers the defendant gave, which the defendant can testify to."[13] Without addressing the timing of the comment, we held that this was an improper comment on the defendant's failure to testify even though it was made before the close of the defendant's case.[14] This is not to say that timing cannot be a factor to consider in determining whether a comment was a comment on the failure to testify.

In *McCarron*, during cross-examination, the prosecutor asked "Well, you just have to accept it at face value unless you talk to the person who wrote it, isn't that right?"[15] Citing *Jackson v. State*[16] and *Terry v. State*,[17] we initially stated that "we have previously held that a comment such as that in the instant case cannot be held to refer to a failure to testify which has not yet occurred."[18] But we went on

---

7. *Griffin*, 380 U.S. at 614, 85 S.Ct. 1229.

8. *See Jones v. State*, 693 S.W.2d 406, 407–408 (Tex.Crim.App.1985), *overruled on other grounds, Swallow v. State*, 829 S.W.2d 223, (Tex.Crim.App.1992); *Banks v. State*, 643 S.W.2d 129, 134 (Tex.Crim.App.1982); *Nowlin v. State*, 507 S.W.2d 534, 535–536 (Tex. Crim.App.1974); *Ramos v. State*, 419 S.W.2d 359, 367 (Tex.Crim.App.1967).

9. *See id.*

10. *See Griffin*, 380 U.S. at 613–614, 85 S.Ct. 1229; *Ramos*, 419 S.W.2d. at 367 (*citing Davis*, 357 F.2d at 441). *See also Johnson v. State*, 611 S.W.2d 649, 650 (Tex.Crim.App. 1981); *Bird*, 527 S.W.2d at 894; *Lipscomb v. State*, 467 S.W.2d 417, 420–21 (Tex.Crim.App. 1971).

11. *Id.*

12. 999 S.W.2d 385 (Tex.Crim.App.1999), *cert. denied*, 530 U.S. 1216, 120 S.Ct. 2220, 147 L.Ed.2d 252 (2000).

13. *Id.* at 405.

14. *Id.*

15. *McCarron*, 605 S.W.2d. at 595.

16. 501 S.W.2d 660 (Tex.Crim.App.1973).

17. 489 S.W.2d 879 (Tex.Crim.App.1973).

18. *McCarron*, 605 S.W.2d at 595.

to hold that there was no error because (1) the "prosecutor had no way of knowing whether [the defendant] would testify at the time the complained of question was asked" and (2) the "question did not refer to her failure to testify, but rather, indicated that she knew whether the check in question was really for a draw." But *McCarron* did not create a *per se* rule that a comment made before the close of a defendant's case can never be a comment on the failure to testify. Instead, the timing of the comment was a factor we considered. It was not dispositive.

Nor do the cases we relied on in *McCarron* support the conclusion that the timing of a comment is dispositive. In *Jackson v. State*, we looked at timing as a factor[19] On cross-examination, the State asked a witness, "Of course, this Judge and us and everybody else and the jury would know how long his fingernails would be three months ago if he would just tell us, wouldn't we?" After finding that the defendant did not preserve error, we noted that (1) the State did not know if the defendant would testify at the time the remark was made and (2) the comment was not a direct allusion to the defendant's failure to testify.[20]

In *Terry v. State*, the defendant's counsel objected when the trial judge asked, "Is [the] defendant going to testify?"[21] Later, the defendant did testify. We held that the judge's question could not be considered by the jury as an allusion to a failure that did not occur because the defendant did not fail to testify.[22]

In *McCarron*, we also relied on *Garcia v. State*.[23] In this case, we noted that there was no comment on the failure to testify where the defendant had not rested his case, the statement made no allusion to his failure to testify, and the question did no more than indicate that the defendant knew whether he was asleep at the time of the burglary.[24] Again, the timing of the comment was considered among an array of factors in determining whether the comment referred to the defendant's failure to testify.

We note that the United States Court of Appeals for the Fifth Circuit also considers timing as a factor and does not discount comments simply because they occur before the close of evidence. In *United States v. Haynes*, Haynes was charged with preparing fraudulent tax returns.[25] One of the taxpayer's returns reflected a $580 deduction for medical expenses.[26] During cross-examination, Haynes' attorney asked the taxpayer whether he had medical expenses other than those he mentioned during direct examination. The court continually told counsel that this information was irrelevant unless he could show that it had been conveyed to Haynes. When Haynes' attorney continued this line of questioning the judge said, "as far as he is concerned you can only consider what he told Mr. Haynes. If you want to put Mr. Haynes on the stand, that is a different matter."[27] With respect to the timing of the comment, the Fifth Circuit said:

> The fact that Haynes had not yet had the opportunity to testify when the re-

**19.** 501 S.W.2d at 662.

**20.** *Id.*

**21.** 489 S.W.2d at 881.

**22.** *Id.*

**23.** 513 S.W.2d 559 (Tex.Crim.App.1974).

**24.** *Terry*, 489 S.W.2d at 881 (*citing Garcia*, 513 S.W.2d at 562).

**25.** 573 F.2d at 237.

**26.** *Id.* at 238.

**27.** *Id.*

mark was made does not, of course, mean that there was no comment on his failure to take the stand. *Davis* makes this clear. However, the fact that the comment came during the government's case-in-chief is useful in terms of context. The judge's remark was a response to defense counsel's argument that Haynes had learned of certain medical insurance expenses from a source other than the taxpayer. The judge's remark dealt with establishing the existence of that particular source, and at that point in the trial it could logically be assumed that Haynes would testify.[28]

In *Davis v. United States* the trial judge, during cross-examination, also commented that defense counsel could overcome an evidentiary problem by putting the defendants on the stand.[29] The judge said several times that the defense could "have your people ... testify if you want them to" and "[b]ring them up here and put them under oath."[30] There was no indication that there was an objection or instruction to disregard. The Fifth Circuit reversed and remanded, holding that the comments invited the jury's attention to the fact that the defendants had not testified.[31]

### Conclusion

A statement can be a comment on the defendant's failure to testify even if it is made before the defendant rests his case. The timing of the comment can be a factor to consider in determining whether the comment was manifestly intended to be a comment on the defendant's silence or was of such character that the jury would necessarily take it as such. The Court of Appeals misconstrued our holding in

*McCarron* by holding that it does not apply to judges. We therefore vacate the Court of Appeals' judgment and remand for proceedings consistent with this opinion.

PRICE, J. filed a dissenting opinion in which HOLLAND and JOHNSON, J.J., joined.

PRICE, J., dissenting, in which HOLLAND and JOHNSON, J.J., join.

We granted the State's petition for discretionary review to determine whether the Court of Appeals erred in failing to apply "the rule of *McCarron* [*v. State*, 605 S.W.2d 589 (Tex.Crim.App.1980 [Panel Op. ] ),]" to comments made by trial judges. The bulk of the majority's analysis addresses whether the Court of Appeals erred in restricting *McCarron* to the timing of comments, a question on which we did not grant review. *See ante* at 765-767. Then in one sentence with no analysis, the majority concludes that "[t]he Court of Appeals misconstrued our holding in *McCarron* by holding that *it* does not apply to judges." *Id.* at 767.

I disagree with the majority's disposition of this case because the Court of Appeals applied the proper test.

The test for determining reversible error in the context of an improper comment before the jury is whether the language used was manifestly intended or was of such character that the jury would necessarily and naturally take it as a comment on the accused's failure to testify. *See Bird v. State*, 527 S.W.2d 891, 894 (Tex. Crim.App.1975). We examine the comment in context and in light of the entire

---

**28.** *Id.* at 239, n. 2.

**29.** 357 F.2d at 440.

**30.** *Id.*

**31.** *Id.* at 441.

record. *Id.* The Court of Appeals applied the proper test and reached the correct result.

Here, the comment was highly alluring because the comment was put in front of the jury by the *judge*, not the prosecutor during closing argument. The effect of this is difficult to quantify, but this was not the typical closing argument situation, where emotions are generally running high, but during the State's case-in-chief. Juries expect each attorney to represent and advocate the rights and interests of his or her client, but the judge is to be the impartial authority figure that ensures the trial proceeds in a fair and orderly manner.

In examining the nature of the comment, we note that it is a direct reference on the accused's right against self-incrimination, but also implies that any evidence that related to the accused's state of mind is not of any consequence until the defendant takes the stand. The error was compounded when the prosecutor immediately respond[ed], "Then he can put his client on the stand and have him testify." This only served to reinforce in the jury's mind that the defendant should testify about what happened.

A curative instruction could serve to negate the effect of a comment such as this, even though the comment was from the judge. However, in this case, the "cure" is almost as debilitating as the poisonous comment. The judge instructs the jury to disregard his comment on the defendant's failure to testify by stating: "The jury is instructed to disregard any comment I made regarding the issue regarding the gang relevance *after we hear from the defendant,* that I may have said or the prosecutor may have said. [Emphasis added]." He instructs the jury to disregard the comment about gang relevance, which was a comment made by the prosecutor. The only mention of the defendant's right *not* to testify is a comment that still refers to the "gang relevance" *after the defendant testifies.* We find that this instruction could only have the effect of further conveying to the jury that the defendant was obliged to testify in order to amount any defense to the crime with which he was charged. This instruction is not specific to the comment and does nothing to mitigate its effect.

In looking at the comment in light of the entire record, we cannot say beyond a reasonable doubt that these comments did not contribute to the conviction or punishment in this case. The witness that was with [the victim] at the scene, Arturo Chavez, was the State's main witness. His testimony is often contradictory (*i .e.*-at what point in time his wife arrived at the scene, where [the appellant] was standing, where [the victim] was standing). Additionally, there was testimony that [the victim] was a drug user and fairly heavy drinker. Although the doctors who testified in the case were of the opinion that [the victim] died as a result of his gunshot wounds, the State's witness, Dr. Contin, conceded that a combination of the types of drugs [the victim] had present in his system could kill someone. There was also a written report that indicated that a cocaine overdose could have cause severe brain injury. However, the jury still found [the appellant] guilty and sentenced him to a lengthy prison term.

*Bustamante v. State,* No. 08–97–00008 CR, slip op. at 6–7 (Tex.App.—El Paso Sept. 23, 1999) (not designated for publication) [*sic passim* ].

The Court of Appeals considered the relevant factors including the timing of the comment, the nature of the comment, the

attempt to cure, and the likely impact on the jury based on the context. The Court of Appeals did all that the law requires; I would affirm the judgment below.