**Jeremie D. SIMPSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–01–00045–CR.**

Court of Appeals of Texas, Texarkana.

Submitted July 30, 2001.

Decided Dec. 13, 2001.

Steven L. Simmons, Pittsburg, for appellant.

Charles C. Bailey, Titus/Camp County District Attorney, Mount Pleasant, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

BEN Z. GRANT, Justice.

Jeremie Simpson appeals his convictions for aggravated robbery and unauthorized use of a motor vehicle. Simpson filed a motion to suppress a statement he made to police, which the trial court overruled after a hearing. He then pleaded guilty to the offenses before a jury. After hearing evidence, the jury assessed his punishment at twenty years' imprisonment for the aggravated robbery offense and two years' imprisonment for the unauthorized use of a motor vehicle offense. The sentences were ordered to run concurrently.

On appeal, Simpson contends the trial court erred in overruling his motion to suppress because his statement was not made knowingly and voluntarily. A guilty plea to a felony offense entered before a jury admits all elements of the offense charged and is conclusive as to the defendant's guilt. *Brinson v. State,* 570 S.W.2d 937, 938–39 (Tex.Crim.App. [Panel Op.] 1978). Such a defendant waives his right to challenge the legal and factual sufficiency of the evidence. *Ex parte Martin,* 747 S.W.2d 789, 792 (Tex.Crim.App.1988) (quoting *Ex parte Williams,* 703 S.W.2d 674, 678 (Tex.Crim.App.1986)); *Turnipseed v. State,* 609 S.W.2d 798, 800–01 (Tex. Crim.App. [Panel Op.] 1980); *Addicks v. State,* 15 S.W.3d 608, 612 (Tex.App.— Houston [14th Dist.] 2000, pet. ref'd).

The judgment of guilt was based on Simpson's guilty plea before the jury and, thus, was rendered independent of and is not supported by the alleged error

in the trial court's ruling on his motion to suppress. Therefore, Simpson's guilty plea to the jury waived any error in the trial court's ruling on his motion to suppress.[1] Simpson does not contend that admission of his statement before the jury had an effect on the sentence he received from the jury.

This case is distinguishable from those cases in which the defendant pleaded guilty before a jury, erroneously believing he would retain his right to appeal the trial court's ruling on his motion to suppress, and the court of appeals held the defendant's erroneous belief made the plea involuntary. See Shallhorn v. State, 732 S.W.2d 636, 637 (Tex.Crim.App.1987); Gillum v. State, 959 S.W.2d 642, 644 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd). In those cases, there was an affirmative indication in the record that the defendant was making the plea contingent on the right to appeal the trial court's ruling, not realizing that his guilty plea waived his right to appeal under the old Helms rule. Shallhorn, 732 S.W.2d at 637; Gillum, 959 S.W.2d at 644; see Helms v. State, 484 S.W.2d 925, 927 (Tex.Crim.App.1972), overruled, Young v. State, 8 S.W.3d 656, 666 (Tex.Crim.App.2000).

In the present case, there is affirmative evidence showing that Simpson did not plead guilty contingent on his right to appeal the trial court's ruling on his motion to suppress. At the end of trial, the trial court inquired whether Simpson wanted to request its permission to appeal. Simpson responded that he did not. However, his attorney commented, "Your Honor, I would like an opportunity to talk to my client regarding appeal if I may have a few days to visit with him in the jail, talk to him and see if he wants to appeal and we'll come back to that." Simpson's attorney's comments reveal that Simpson's guilty plea was not contingent on his right to appeal the trial court's ruling on his motion to suppress.

■ Nevertheless, even if Simpson's guilty plea did not waive any error in the trial court's ruling on his motion to suppress, the record reveals no error. Simpson testified that he was drunk on April 11, 2000, the day he turned himself in to the Titus County sheriff's office. Specifically, he testified that he had about eighteen beers that day and only recalled getting out of his truck at the sheriff's office and vomiting in "detox." Simpson testified that he did not remember making a statement, did not remember having his Miranda[2] rights read to him, did not remember signing the statement, and did not remember talking on the following day to the officer who took the statement.

On cross-examination, Simpson testified that he had previously been convicted of a felony. He also identified what appeared to him to be his initials and his signature in three different places on the statement. On redirect examination, however, he observed that of the five warnings written on the statement, his initials appeared next to only four of them.

Simpson's wife, Nanette, and his mother, Tina Newberry, testified that they were with Simpson the day he turned himself in. They testified that Simpson had been drinking before they met him around noon

---

1. An open plea or a plea bargain to the court does not preclude certain appeals that relate to guilt/innocence. A plea of guilty to a jury puts a defendant at a disadvantage on appeal on any matters except those occurring in the assessment of the punishment. This approach should be reviewed because it penal-izes a defendant who elects to have his or her sentence assessed by a jury after pleading guilty before a jury.

2. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

in Tyler. Nanette testified that it appeared Simpson had "a lot" of beer before he met them. They drove from Tyler through Big Sandy, where they bought a case (twenty-four cans) of beer. They testified that Simpson and Tina's husband, David Newberry, split the case of beer as they drove to Mount Pleasant.

Before arriving in Mount Pleasant, they drove to Mount Vernon and stopped at a restaurant where, according to both witnesses, Simpson did not eat much. Nanette testified that they returned to Mount Pleasant, stopping along the way in Winfield to purchase another case of beer, which Simpson and Newberry split. Nanette and Tina testified that Simpson was very drunk when he turned himself in at the sheriff's office, that he had to be helped out of the truck, that he could not walk without stumbling or bumping into things, and that his speech was slurred. The trip from Tyler lasted around six or seven hours.

The State called Officer Chris Bragg, who met Simpson at the sheriff's office and took his statement. He testified that Simpson was able to exit the truck without any assistance and that he grabbed Bragg around the arms and told him, "Well, let's go get this taken care of." Bragg testified that he read Simpson his rights, that Simpson indicated he understood his rights, and that he indicated that he was willing to waive his rights and talk to Bragg about the offense. Bragg testified that he could smell alcohol on Simpson's breath, but testified that he did not appear to be intoxicated and that his speech was not slurred.

Bragg testified that he took a detailed statement from Simpson, that he did not know much of what Simpson told him prior to Simpson's giving the statement, that he gave Simpson the opportunity to read the statement, that he asked Simpson whether he wanted to make any changes, and that Simpson indicated he did not. Bragg testified that he spoke with Simpson again the next day, that he gave Simpson the *Miranda* warnings, that Simpson indicated that he understood the warnings and wished to waive his rights, that Simpson reiterated his statement from the previous night, and that Simpson remembered talking to Bragg the night before.

At the conclusion of the hearing, the trial court found that Simpson was not intoxicated at the time he made his statement. The trial court also found that Simpson was made aware of his rights and knowingly and voluntarily waived those rights. The trial court further found that the statement was not given by compulsion, intimidation, promise, or unlawful detention. Thus, the trial court found that Simpson's statement was made knowingly and voluntarily.

At a suppression hearing, the trial court is the exclusive trier of fact and judge of the credibility of the witnesses and the weight of their testimony. *Green v. State*, 934 S.W.2d 92, 98 (Tex.Crim.App. 1996). Therefore, an appellate court must view the record and draw all reasonable inferences therefrom in the light most favorable to the trial court's ruling. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim.App.1996). Further, the appellate court must sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Id.; Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990).

The general rule is that an appellate court should afford almost total deference to a trial court's determination of the historical facts that the record supports, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Guzman v.*

*State,* 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). We are also to afford such deference to a trial court's ruling on the "application of law to fact questions" if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Id.* Application of law to fact questions not turning on credibility and demeanor may be reviewed by appellate courts de novo. *Id.*

 When the voluntariness of a confession is challenged, the trial court must make an independent determination in the absence of the jury as to whether the statement was voluntarily made. *Jackson v. Denno,* 378 U.S. 368, 380, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); Tex. Code Crim. Proc. Ann. art. 38.22, § 6 (Vernon 1979). At this hearing, the State has the burden under the Fifth and Fourteenth Amendments of proving by a preponderance of the evidence that the confession was voluntary. *Lego v. Twomey,* 404 U.S. 477, 489, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); *Alvarado v. State,* 912 S.W.2d 199, 211 (Tex.Crim.App.1995). However, the prosecution is not put to this burden unless a defendant presents evidence that raises a voluntariness question. *State v. Terrazas,* 4 S.W.3d 720, 724 (Tex.Crim. App.1999) (citing Tex.Code Crim. Proc. Ann. art. 38.22, § 6).

The statement of an accused may be used against him if it appears it was freely and voluntarily made without compulsion or persuasion. Tex.Code Crim. Proc. Ann. art. 38.21 (Vernon 1979). A statement is involuntary if there was official, coercive conduct of such a nature that any statement obtained was unlikely to have been the product of an essentially free and unconstrained choice. *Alvarado,* 912 S.W.2d at 211.

Intoxication, while relevant, does not render a confession involuntary per se.

*Jones v. State,* 944 S.W.2d 642, 651 (Tex. Crim.App.1996). Instead, the question becomes whether the defendant's intoxication rendered him incapable of making an independent, informed decision to confess. *Id.*

In the present case, the trial court specifically found that Simpson was not intoxicated at the time he made his statement. Further, the trial court found that he knowingly waived his rights and that the statement he made was not influenced by compulsion, intimidation, promise, or unlawful detention. These findings were amply supported by Bragg's testimony, which the trial court chose to believe. In view of the divergent testimony between Simpson's witnesses and the State's witnesses, we must defer to the trial court's findings on this issue.

The judgment is affirmed.