COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-166-CR

 

 

DOUGLAS WAYNE HARRIS                                                   APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM THE 78TH
DISTRICT COURT OF WICHITA COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I.  Introduction








Douglas Wayne Harris pleaded guilty to aggravated
robbery and true to an enhancement paragraph, a jury assessed his punishment at
fifty-five years= confinement, and the trial
court sentenced him accordingly.  In
three issues, Harris contends that the trial court erred by overruling two
motions to suppress that he filed and by overruling two requests that he made
for a mistrial after the State purportedly commented during jury argument on
his failure to testify.  We will affirm.

II.  Factual and Procedural Background

On August 17, 2005, Robert and Sharon Entrekin
were working at a convenience store that they owned in Wichita Falls.  At approximately 11:15 a.m., Harris entered
the store, pointed a gun in Mr. Entrekin=s face,
demanded and took money from the cash register, ordered the Entrekins and an
employee into the back office, and fled the scene in his car.  The Entrekins watched Harris leave the store
on the security monitors located in the back office and called the police,
providing police with a description of the robber and his vehicle.  The police dispatcher sent a broadcast
reporting the robbery, providing a 
description of the suspect as a white male and describing the suspect=s
vehicle as an older model green Ford. 








Wichita County Sheriff=s
Department Deputy George Robinson heard this broadcast and drove toward the
convenience store in an unmarked police vehicle.  While en route, Deputy Robinson saw a vehicle
matching the description given by the dispatcher heading in the opposite
directionCaway from the scene of the
crime.  As Deputy Robinson passed the
vehicle, he observed the driverCa white
maleCAmake a
very abrupt turn towards [Deputy Robinson] to look at [him].@  Deputy Robinson made a U-turn, radioed for
backup, and advised the dispatcher that he was following a vehicle that matched
the description of the robbery suspect=s
vehicle.

Deputy Robinson followed the vehicle for a short
period of time andCalthough he subsequently agreed
that he did not observe the vehicle violate any traffic lawsChe
decided to pull the vehicle over as it entered a residential neighborhood.  Deputy Robinson explained that he stopped the
vehicle because the driver and the vehicle matched the description of the
robbery suspect and the suspect=s
vehicle, respectively.  Deputy Robinson
later identified Harris as the man he pulled over.

Shortly after Deputy Robinson pulled Harris over,
backup officers arrived and detained Harris while Deputy Robinson went to the
convenience store.  The backup officers
subsequently transported Harris to the convenience store, leaving Harris=s
vehicle where Deputy Robinson initially stopped it.  When Harris arrived at the convenience store,
another officer who had previously viewed the store=s
surveillance video of the robbery identified Harris as the same person he had
observed on the store=s surveillance video.








At the store, Harris indicated that he had
already been given his Miranda warnings, but a second officer again read
him his rights.  Shortly thereafter,
Harris consented to a search of his vehicle, signed two written
consent-to-search forms,[2]
and ultimately admitted that he had committed the robbery.  Harris informed the officers that the gun and
the cash could both be found in a specific location in his vehicle.  Despite having Harris=s oral
consent and two written consent-to-search forms, Deputy Robinson instructed the
other officers not to search the vehicle until he returned with a search
warrant.  Deputy Robinson secured that
search warrant and ultimately discovered the gun and the cash in the same
location that Harris had described. 

The grand jury indicted Harris for aggravated
robbery.  Before trial, Harris filed
motions to suppress his statements to law enforcement and evidence seized from
his vehicle.  After hearing testimony
from Deputy Robinson and two other deputies, the trial court denied those
motions.  Harris subsequently pleaded
guilty to the aggravated robbery charge and elected to have the jury assess his
punishment.








At punishment, Harris objected to, and moved for
a mistrial based upon, two statements made by the State during closing
argument.  The trial court sustained
Harris=s
objections and instructed the jury to disregard the statements, but denied
Harris=s
motions for mistrial.  The jury assessed
Harris=s
punishment at fifty-five years=
confinement, and the trial court sentenced him accordingly.  Harris timely filed his notice of appeal.

III.  Motions to Suppress

In his first issue, Harris contends that the
trial court erred by overruling his motions to suppress his post-arrest
statements and all evidence seized from the convenience store, Harris=s
residence, and Harris=s car.[3]  Harris=s
premise for all of his suppression arguments is that Deputy Robinson=s
initial stop of his vehicle was illegal. 
The State argues that Harris waived the pretrial suppression issue by
pleading guilty to a jury without the benefit of a plea bargain,[4]
or, alternatively, that the trial court did not err by denying the motions to
suppress because law enforcement officers had a reasonable suspicion to conduct
the initial stop and because the post-arrest statements and subsequently seized
evidence were attenuated from any alleged taint in the initial stop or arrest.








A. 
Standard of Review

We review a trial court=s ruling
on a motion to suppress evidence under a bifurcated standard of review.  Carmouche v. State, 10 S.W.3d 323, 327
(Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).  In reviewing the trial court=s
decision, we do not engage in our own factual review.  Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.CFort
Worth 2003, no pet.).  The trial judge is
the sole trier of fact and judge of the credibility of the witnesses and the
weight to be given their testimony.  State
v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); State v. Ballard,
987 S.W.2d 889, 891 (Tex. Crim. App. 1999). 
Therefore, we give almost total deference to the trial court=s
rulings on (1) questions of historical fact, even if the trial court=s
determination of those facts was not based on an evaluation of credibility and
demeanor, and (2) application‑of‑law‑to‑fact questions
that turn on an evaluation of credibility and demeanor.  Montanez v. State, 195 S.W.3d 101,
108-09 (Tex. Crim. App. 2006); Johnson v. State, 68 S.W.3d 644, 652‑53
(Tex. Crim. App. 2002); State v. Ballman, 157 S.W.3d 65, 68 (Tex. App.CFort
Worth 2004, pet. ref=d).  But when the trial court=s
rulings do not turn on the credibility and demeanor of the witnesses, we review
de novo a trial court=s rulings on mixed questions of
law and fact.  Estrada v. State,
154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson, 68 S.W.3d at 652‑53.








Stated another way, when reviewing the trial
court=s ruling
on a motion to suppress, we must view the evidence in the light most favorable
to the trial court=s ruling.  State v. Kelly, 204 S.W.3d 808, 818
(Tex. Crim. App. 2006).  When the trial
court makes explicit fact findings, we determine whether the evidence, when
viewed in the light most favorable to the trial court=s
ruling, supports those fact findings.  Id.
at 818-19.  We then review the trial
court=s legal
ruling de novo unless its explicit fact findings that are supported by the
record are also dispositive of the legal ruling.  Id. at 819.

We must uphold the trial court=s ruling
if it is supported by the record and correct under any theory of law applicable
to the case even if the trial court gave the wrong reason for its ruling.  Armendariz v. State, 123 S.W.3d 401,
404 (Tex. Crim. App. 2003), cert. denied, 541 U.S. 974 (2004); Ross,
32 S.W.3d at 856; Romero, 800 S.W.2d at 543.  

B.  Valid
Investigative Detention








The Fourth Amendment protects against
unreasonable searches and seizures.  U.S.
Const. amend. IV.  To suppress evidence because of an alleged
Fourth Amendment violation, the defendant bears the initial burden of producing
evidence that rebuts the presumption of proper police conduct.  Torres v. State, 182 S.W.3d 899, 902
(Tex. Crim. App. 2005); Ford v. State, 158 S.W.3d 488, 492 (Tex. Crim.
App. 2005).  A defendant satisfies this
burden by establishing that a search or seizure occurred without a
warrant.  Torres, 182 S.W.3d at
902; Ford, 158 S.W.3d at 492. 
Once the defendant has made this showing, the burden of proof shifts to
the State, which is then required to establish that the search or seizure was
conducted pursuant to a warrant or was reasonable.  Torres, 182 S.W.3d at 902; Ford,
158 S.W.3d at 492.

A detention, as opposed to an arrest, may be
justified on less than probable cause if a person is reasonably suspected of
criminal activity based on specific, articulable facts.  Terry v. Ohio, 392 U.S. 1, 22, 88 S.
Ct. 1868, 1880 (1968); Carmouche, 10 S.W.3d at 328.  An officer conducts a lawful temporary
detention when he or she has reasonable suspicion to believe that an individual
is violating the law.  Ford, 158
S.W.3d at 492.  Reasonable suspicion
exists when, based on the totality of the circumstances, the officer has
specific, articulable facts that when combined with rational inferences from
those facts would lead him to reasonably conclude that a particular person is,
has been, or soon will be engaged in criminal activity.  Id. at 492-93.  This is an objective standard that disregards
any subjective intent of the officer making the stop and looks solely to
whether an objective basis for the stop exists. 
Id.  at 492.













Here, Harris challenges the validity of the
initial traffic stop.  Thus, we must
determine whether Deputy Robinson had a reasonable suspicion, based on
specific, articulable facts, to justify the detention.  See Terry, 392 U.S. at 22, 88 S. Ct.
at 1880.  Deputy Robinson testified that
he heard the dispatcher send out a broadcast describing the robbery suspect as
a white male driving an older model green Ford vehicle, that he saw a man and
vehicle matching that description on his way to the convenience store, that he
saw the man Amake a very abrupt turn@ towards
him to look at him as he passed, and that he pulled the vehicle over as it
pulled into a residential neighborhood. 
Under the totality of the circumstances, these specific, articulated
facts and all rational inferences drawn from these facts demonstrate that
Deputy Robinson had reasonable suspicion to stop Harris and to believe that
Harris was the same man involved in the robbery.  See, e.g., Louis v. State, 825 S.W.2d
752, 755 (Tex. App.CHouston [14th Dist.] 1992, pet.
ref=d)
(holding that officers had reasonable suspicion to stop three black men driving
a tan Cadillac when police broadcast reported robbery suspects as two black
males in a white Oldsmobile).       Because, based on the police radio
broadcast, Deputy Robinson possessed reasonable suspicion that Harris was the
person who had just robbed the Entrekins=
convenience store, his initial stop of Harris=s
vehicle was permissible so that he could conduct an investigative
detention.  Thus, Deputy Robinson=s
initial stop of Harris=s vehicle was not illegal as
Harris contends, and we need not further address Harris=s
contentions that his post-arrest statements and the physical evidence recovered
from his vehicle were fruits of an illegal stop.[5]  We therefore overrule Harris=s first
issue.

IV.  Motions for Mistrial

In his second and third issues, Harris contends
that the trial court erred by denying two motions for mistrial he made based on
alleged improper jury argument by the State. 

A. 
Standard of Review








When the trial court sustains an objection to
jury argument and instructs the jury to disregard but denies a defendant=s motion
for a mistrial, the issue is whether the trial court abused its discretion in
denying the mistrial.  Hawkins v.
State, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).  To determine whether a prosecutor=s
comment during jury argument violated article 38.08 of the Texas Code of
Criminal Procedure and constituted an impermissible reference to an accused=s
failure to testify, we must consider whether the language used was manifestly
intended or was of such a character that the jury would naturally and
necessarily consider it to be a comment on the defendant=s
failure to testify.  Tex. Code Crim. Proc. Ann. art. 38.08
(Vernon 2005); see Bustamante v. State, 48 S.W.3d 761, 765 (Tex. Crim.
App. 2001); Fuentes v. State, 991 S.W.2d 267, 275 (Tex. Crim. App.), cert.
denied, 528 U.S. 1026 (1999).  The
offending language must be viewed from the jury=s
standpoint, and the implication that the comment referred to the accused=s
failure to testify must be clear.  Bustamante,
48 S.W.3d at 765; Swallow v. State, 829 S.W.2d 223, 225 (Tex.
Crim. App. 1992).  A mere indirect or
implied allusion to the defendant=s
failure to testify does not violate the accused=s right
to remain silent.  Patrick v. State,
906 S.W.2d 481, 490‑91 (Tex. Crim. App. 1995), cert. denied, 517
U.S. 1106 (1996).

B.  The
State=s Arguments 

At trial, the jury heard testimony from ten
witnesses, including Harris=s
sister-in-law.  Harris=s
sister-in-law testified about the death of Harris=s niece
and the effects her death had on Harris. 
During closing argument, Harris=s counsel
argued that the death of Harris=s niece
was at least a factor in Harris=s
behavior leading up to the robbery.  He
also urged the jury to impose the minimum fifteen-year sentence.  The State in rebuttal argued:

The minute he put his
hand in that till and took that money, he=s taking from the [E]ntrecans [sic] that which
they had earned through their hard work. 
It=s about a lack of
respect, not unlike the lack of respect he=s showing you right now asking you to Adon=t throw me in that briar
patch.@  Don=t try to lock him up for a while.

 








Harris immediately objected that this was Aan improper
comment on the Defendant=s not testifying.@  The court sustained the objection and
instructed the jury A[t]o the extent that it would be
interpreted as a comment by the Defendant, you=re
instructed to disregard it.@  Harris then moved for a mistrial, which the
court denied.

After the court denied the motion for mistrial
for the first allegedly improper comment, the State continued its argument and
began discussing the death of Harris=s niece:

The same man that was
asked to hold a position of respect at that funeral carrying that little girl
to her place in the ground, this is the same man that took that pistol into the
[E]ntrecans= store, and how dare he
try to hide behind the death of his niece. 
How dare he try to tell you that because of that tragedy, I am stealing
the money.

 

Harris again objected, arguing that it was an improper comment on his
failure to testify at trial.  The trial
court sustained his objection and again instructed the jury Ato the
extent that you would interpret that as either [Harris=s]
testifying or failing to testify, you=re
instructed to disregard it.@  Harris moved for a second mistrial, which the
trial court also overruled.

C.  No
Comment on Harris=s Failure to Testify








We cannot hold that the first argument by the
State recited above was a comment on Harris=s
failure to testify.  See, e.g.,
Montgomery v. State, No. 02-01-00451-CR, 2003 WL 22026416, at *2 (Tex. App.CFort
Worth Aug. 27, 2003, pet. ref=d) (op.
on reh=g) (mem.
op.) (not designated for publication) (holding that prosecutor=s
comment that Athis is not his first time to
ask for leniency@ was not a comment on defendant=s
failure to testify).  Prior to the State=s
argument in rebuttal, Harris=s
counsel had argued for the minimum fifteen-year sentence.  The State properly responded to that argument
through language that was not Amanifestly
intended or . . . of such a character that the jury would necessarily and
naturally take it as a comment on [Harris=s]
failure to testify.@ 
See Bustamante, 48 S.W.3d at 765.

Nor can we hold that the State=s second
argument constituted a comment on Harris=s
failure to testify.  The jury would not Anecessarily
and naturally take [the State=s second
argument] . . . as a comment on [Harris=s]
failure to testify.@ 
See id.  








But even if the jury could take either of these
arguments as comments on Harris=s
failure to testify, the trial court instructed the jury to disregard those
statements, and Harris presented no evidence to rebut the presumption that the
jury followed the court=s instruction to disregard the
State=s
comments during closing argument.  See
Michaelwicz v. State, 186 S.W.3d 601, 620 (Tex. App.CAustin
2006, pet. ref=d) (AThe jury
is presumed to follow the trial court=s
instruction to disregard unless the comment is so prejudicial or extreme that
the instruction was incapable of removing the harm.@).  We therefore hold that the trial court=s
instructions to disregard were effective and cured the prejudicial effect, if
any, stemming from the State=s
comments during closing argument.  See
Simpson v. State, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003), cert.
denied, 542 U.S. 905 (2004); Grotti v. State, 209 S.W.3d 747, 777
(Tex. App.CFort Worth 2006, pet.
filed).  Accordingly, the trial court did
not abuse its discretion by denying Harris=s
motions for mistrial.  We overrule Harris=s second
and third issues.

V.  Conclusion

Having overruled Harris=s
issues, we affirm the trial court=s
judgment.

PER
CURIAM

 

PANEL F: WALKER, GARDNER
and McCOY, JJ.

 

DO NOT PUBLISH

Tex.
R. App. P.
47.2(b)

 

DELIVERED: March 1, 2007











[1]See Tex. R. App. P. 47.4.





[2]Harris signed the first
form when Deputy Lemons asked for his consent to search the vehicle.  But one of Deputy Lemons=s supervisors requested
that Deputy Lemons, using one of the patrol unit=s video recorders,
videotape Harris executing a second consent to search.  Harris therefore signed a second consent to
search form. 





[3]As mentioned previously,
Harris filed three motions to suppress. 
In addition to the two described above, Harris also filed a motion to
suppress any evidence of witnesses= identification of him as the person who
committed the offense.  The trial court
denied all three motions in a single order. 
Harris does not challenge the trial court=s ruling on this third
motion to suppress. 





[4]The State relies on Simpson
v. State, 67 S.W.3d 327, 329 (Tex. App.CTexarkana 2001, no pet.), a case from our sister
court holding that an open plea of guilty before a jury waives any error in the
trial court=s denial of a motion to
suppress where the judgment of guilt was independent of any alleged error in
the trial court=s ruling.  For reasons discussed below, we hold that the
trial court did not err by denying Harris=s motions to suppress and, therefore, we do not
address whether Harris waived this issue. 
See Tex. R. App. P. 47.1.





[5]We do note, however, that
the record reflects numerous Miranda warnings given to Harris before he made
his post-arrest statements.  The record
also reflects that Harris gave law enforcement consent to search his vehicle
both orally and in writing on two occasions. 
At the suppression hearing, even the 
trial judge noted that AI will say I don=t know if I=ve ever seen a case where
Mr. Harris was warned of his rights so much by so many different people in so
many different forms.  I think this is
all good.@