COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-166-CR

DOUGLAS WAYNE HARRIS APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 78TH DISTRICT COURT OF WICHITA COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Douglas Wayne Harris pleaded guilty to aggravated robbery and true to an enhancement paragraph, a jury assessed his punishment at fifty-five years’ confinement, and the trial court sentenced him accordingly.  In three issues, Harris contends that the trial court erred by overruling two motions to suppress that he filed and by overruling two requests that he made for a mistrial after the State purportedly commented during jury argument on his failure to testify.  We will affirm.

II.  Factual and Procedural Background

On August 17, 2005, Robert and Sharon Entrekin were working at a convenience store that they owned in Wichita Falls.  At approximately 11:15 a.m., Harris entered the store, pointed a gun in Mr. Entrekin’s face, demanded and took money from the cash register, ordered the Entrekins and an employee into the back office, and fled the scene in his car.  The Entrekins watched Harris leave the store on the security monitors located in the back office and called the police, providing police with a description of the robber and his vehicle.  The police dispatcher sent a broadcast reporting the robbery, providing a  description of the suspect as a white male and describing the suspect’s vehicle as an older model green Ford. 

Wichita County Sheriff’s Department Deputy George Robinson heard this broadcast and drove toward the convenience store in an unmarked police vehicle.  While en route, Deputy Robinson saw a vehicle matching the description given by the dispatcher heading in the opposite direction—away from the scene of the crime.  As Deputy Robinson passed the vehicle, he observed the driver—a white male—“make a very abrupt turn towards [Deputy Robinson] to look at [him].”  Deputy Robinson made a U-turn, radioed for backup, and advised the dispatcher that he was following a vehicle that matched the description of the robbery suspect’s vehicle.

Deputy Robinson followed the vehicle for a short period of time and—although he subsequently agreed that he did not observe the vehicle violate any traffic laws—he decided to pull the vehicle over as it entered a residential neighborhood.  Deputy Robinson explained that he stopped the vehicle because the driver and the vehicle matched the description of the robbery suspect and the suspect’s vehicle, respectively.  Deputy Robinson later identified Harris as the man he pulled over.

Shortly after Deputy Robinson pulled Harris over, backup officers arrived and detained Harris while Deputy Robinson went to the convenience store.  The backup officers subsequently transported Harris to the convenience store, leaving Harris’s vehicle where Deputy Robinson initially stopped it.  When Harris arrived at the convenience store, another officer who had previously viewed the store’s surveillance video of the robbery identified Harris as the same person he had observed on the store’s surveillance video.

At the store, Harris indicated that he had already been given his 
Miranda
 warnings, but a second officer again read him his rights.  Shortly thereafter, Harris consented to a search of his vehicle, signed two written consent-to-search forms,
(footnote: 2) and ultimately admitted that he had committed the robbery.  Harris informed the officers that the gun and the cash could both be found in a specific location in his vehicle.  Despite having Harris’s oral consent and two written consent-to-search forms, Deputy Robinson instructed the other officers not to search the vehicle until he returned with a search warrant.  Deputy Robinson secured that search warrant and ultimately discovered the gun and the cash in the same location that Harris had described. 

The grand jury indicted Harris for aggravated robbery.  Before trial, Harris filed motions to suppress his statements to law enforcement and evidence seized from his vehicle.  After hearing testimony from Deputy Robinson and two other deputies, the trial court denied those motions.  Harris subsequently pleaded guilty to the aggravated robbery charge and elected to have the jury assess his punishment.

At punishment, Harris objected to, and moved for a mistrial based upon, two statements made by the State during closing argument.  The trial court sustained Harris’s objections and instructed the jury to disregard the statements, but denied Harris’s motions for mistrial.  The jury assessed Harris’s punishment at fifty-five years’ confinement, and the trial court sentenced him accordingly.  Harris timely filed his notice of appeal.

III.  Motions to Suppress

In his first issue, 
Harris contends that the trial court erred by overruling his motions to suppress his post-arrest statements and all evidence seized from the convenience store, Harris’s residence, and Harris’s car.
(footnote: 3)  
Harris’s premise for all of his suppression arguments is that Deputy Robinson’s initial stop of his vehicle was illegal.  The State argues that Harris waived the pretrial suppression issue by pleading guilty to a jury without the benefit of a plea bargain,
(footnote: 4) or, alternatively, that the trial court did not err by denying the motions to suppress because law enforcement officers had a reasonable suspicion to conduct the initial stop and because the post-arrest statements and subsequently seized evidence were attenuated from any alleged taint in the initial stop or arrest.

A.  Standard of Review

We review a trial court’s ruling on a motion to suppress evidence under a bifurcated standard of review.  
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  In reviewing the trial court’s decision, we do not engage in our own factual review.  
Romero v. State
, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); 
Best v. State
, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).  The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.  
State v. Ross
, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); 
State v. Ballard
, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).  Therefore, we give almost total deference to the trial court’s rulings on (1) questions of historical fact, even if the trial court’s determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.  
Montanez v. State
, 195 S.W.3d 101, 108-09 (Tex. Crim. App. 2006); 
Johnson v. State
, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); 
State v. Ballman
, 157 S.W.3d 65, 68 (Tex. App.—Fort Worth 2004, pet. ref’d).  But when the trial court’s rulings do not turn on the credibility and demeanor of the witnesses, we review de novo a trial court’s rulings on mixed questions of law and fact.  
Estrada v. State
, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); 
Johnson
, 68 S.W.3d at 652-53.

Stated another way, when reviewing the trial court’s ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court’s ruling.  
State v. Kelly
, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court’s ruling, supports those fact findings.  
Id
. at 818-19.  We then review the trial court’s legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling.  
Id
. at 819.

We must uphold the trial court’s ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling.  
Armendariz v. State
, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), 
cert. denied
, 541 U.S. 974 (2004); 
Ross
, 32 S.W.3d at 856; 
Romero
, 800 S.W.2d at 543.  

B.  Valid Investigative Detention

The Fourth Amendment protects against unreasonable searches and seizures.  U.S. 
Const
. amend. IV.  To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct.  
Torres v. State
, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); 
Ford v. State
, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).  A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant.  
Torres
, 182 S.W.3d at 902; 
Ford
, 158 S.W.3d at 492.  Once the defendant has made this showing, the burden of proof shifts to the State, which is then required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable.  
Torres
, 182 S.W.3d at 902; 
Ford
, 158 S.W.3d at 492.

A detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts.  
Terry v. Ohio
, 392 U.S. 1, 22, 88 S. Ct. 1868, 1880 (1968); 
Carmouche
, 10 S.W.3d at 328.  An officer conducts a lawful temporary detention when he or she has reasonable suspicion to believe that an individual is violating the law.  
Ford
, 158 S.W.3d at 492.  Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that when combined with rational inferences from those facts would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity.  
Id
. at 492-93.  This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists.  
Id
.  at 492.

Here, Harris challenges the validity of the initial traffic stop.  Thus, we must determine whether Deputy Robinson had a reasonable suspicion, based on specific, articulable facts, to justify the detention.  
See Terry
, 392 U.S. at 22, 88 S. Ct. at 1880.  Deputy Robinson testified that he heard the dispatcher send out a broadcast describing the robbery suspect as a white male driving an older model green Ford vehicle, that he saw a man and vehicle matching that description on his way to the convenience store, that he saw the man “make a very abrupt turn” towards him to look at him as he passed, and that he pulled the vehicle over as it pulled into a residential neighborhood.  Under the totality of the circumstances, these specific, articulated facts and all rational inferences drawn from these facts demonstrate that Deputy Robinson had reasonable suspicion to stop Harris and to believe that Harris was the same man involved in the robbery.  
See, e.g., Louis v. State
, 825 S.W.2d 752, 755 (Tex. App.—Houston [14th Dist.] 1992, pet. ref’d) (holding that officers had reasonable suspicion to stop three black men driving a tan Cadillac when police broadcast reported robbery suspects as two black males in a white Oldsmobile).   Because, based on the police radio broadcast, Deputy Robinson possessed reasonable suspicion that Harris was the person who had just robbed the Entrekins’ convenience store, his initial stop of Harris’s vehicle was permissible so that he could conduct an investigative detention.  Thus, Deputy Robinson’s initial stop of Harris’s vehicle was not illegal as Harris contends, and we need not further address Harris’s contentions that his post-arrest statements and the physical evidence recovered from his vehicle were fruits of an illegal stop.
(footnote: 5)  We therefore overrule Harris’s first issue.

IV.  Motions for Mistrial

In his second and third issues, Harris contends that the trial court erred by denying two motions for mistrial he made based on alleged improper jury argument by the State. 

A.  Standard of Review

When the trial court sustains an objection to jury argument and instructs the jury to disregard but denies a defendant’s motion for a mistrial, the issue is whether the trial court abused its discretion in denying the mistrial.  
Hawkins v. State
, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).
  
To determine whether a prosecutor’s comment during jury argument violated article 38.08 of the Texas Code of Criminal Procedure and constituted an impermissible reference to an accused’s failure to testify, we must consider whether the language used was manifestly intended or was of such a character that the jury would naturally and necessarily consider it to be a comment on the defendant’s failure to testify.  
Tex. Code Crim. Proc. Ann.
 art. 38.08 (Vernon 2005); 
see Bustamante v. State
, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001); 
Fuentes v. State
, 991 S.W.2d 267, 275 (Tex. Crim. App.), 
cert. denied
, 528 U.S. 1026 (1999).  The offending language must be viewed from the jury’s standpoint, and the implication that the comment referred to the accused’s failure to testify must be clear.  
Bustamante
, 48 S.W.3d at 765; 
Swallow
 
v. State
, 829 S.W.2d 223, 225 (Tex. Crim. App. 1992).  A mere indirect or implied allusion to the defendant’s failure to testify does not violate the accused’s right to remain silent.  
Patrick v. State
, 906 S.W.2d 481, 490-91 (Tex. Crim. App. 1995), 
cert. denied
, 517 U.S. 1106 (1996).

B.  The State’s Arguments
 

At trial, the jury heard testimony from ten witnesses, including Harris’s sister-in-law.  Harris’s sister-in-law testified about the death of Harris’s niece and the effects her death had on Harris.  During closing argument, Harris’s counsel argued that the death of Harris’s niece was at least a factor in Harris’s behavior leading up to the robbery.  He also urged the jury to impose the minimum fifteen-year sentence.  The State in rebuttal argued:

The minute he put his hand in that till and took that money, he’s taking from the [E]ntrecans [sic] that which they had earned through their hard work.  It’s about a lack of respect, not unlike the lack of respect he’s showing you right now asking you to “don’t throw me in that briar patch.”  Don’t try to lock him up for a while.

Harris immediately objected that this was “an improper comment on the Defendant’s not testifying.”  The court sustained the objection and instructed the jury “[t]o the extent that it would be interpreted as a comment by the Defendant, you’re instructed to disregard it.”  Harris then moved for a mistrial, which the court denied.

After the court denied the motion for mistrial for the first allegedly improper comment, the State continued its argument and began discussing the death of Harris’s niece:

The same man that was asked to hold a position of respect at that funeral carrying that little girl to her place in the ground, this is the same man that took that pistol into the [E]ntrecans’ store, and how dare he try to hide behind the death of his niece.  How dare he try to tell you that because of that tragedy, I am stealing the money.

Harris again objected, arguing that it was an improper comment on his failure to testify at trial.  The trial court sustained his objection and again instructed the jury “to the extent that you would interpret that as either [Harris’s] testifying or failing to testify, you’re instructed to disregard it.”  Harris moved for a second mistrial, which the trial court also overruled.

C.  No Comment on Harris’s Failure to Testify

We cannot hold that the first argument by the State recited above was a comment on Harris’s failure to testify.  
See, e.g., Montgomery v. State
, No. 02-01-00451-CR, 2003 WL 22026416, at *2 (Tex. App.—Fort Worth Aug. 27, 2003, pet. ref’d) (op. on reh’g) (mem. op.) (not designated for publication) (holding that prosecutor’s comment that “this is not his first time to ask for leniency” was not a comment on defendant’s failure to testify).  Prior to the State’s argument in rebuttal, Harris’s counsel had argued for the minimum fifteen-year sentence.  The State properly responded to that argument through language that was not “manifestly intended or . . . of such a character that the jury would necessarily and naturally take it as a comment on [Harris’s] failure to testify.”  
See Bustamante
, 48 S.W.3d at 765.

Nor can we hold that the State’s second argument constituted a comment on Harris’s failure to testify.  The jury would not “necessarily and naturally take [the State’s second argument] . . . as a comment on [Harris’s] failure to testify.”  
See id
.  

But even if the jury could take either of these arguments as comments on Harris’s failure to testify, the trial court instructed the jury to disregard those statements, and Harris presented no evidence to rebut the presumption that the jury followed the court’s instruction to disregard the State’s comments during closing argument.  
See Michaelwicz v. State
, 186 S.W.3d 601, 620 (Tex. App.—Austin 2006, pet. ref’d) (“The jury is presumed to follow the trial court’s instruction to disregard unless the comment is so prejudicial or extreme that the instruction was incapable of removing the harm.”).  We therefore hold that the trial court’s instructions to disregard were effective and cured the prejudicial effect, if any, stemming from the State’s comments during closing argument.  
See
 
Simpson v. State
, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003), 
cert. denied
, 542 U.S. 905 (2004); 
Grotti v. State
, 209 S.W.3d 747, 777 (Tex. App.—Fort Worth 2006, pet. filed).  Accordingly, the trial court did not abuse its discretion by denying Harris’s motions for mistrial.  We overrule Harris’s second and third issues.

V.  Conclusion

Having overruled Harris’s issues, we affirm the trial court’s judgment.

PER CURIAM

PANEL F: WALKER, GARDNER and McCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: March 1, 2007

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Harris signed the first form when Deputy Lemons asked for his consent to search the vehicle.  But one of Deputy Lemons’s supervisors requested that Deputy Lemons, using one of the patrol unit’s video recorders, videotape Harris executing a second consent to search.  Harris therefore signed a second consent to search form. 

3:
As mentioned previously, Harris filed three motions to suppress.  In addition to the two described above, Harris also filed a motion to suppress any evidence of witnesses’ identification of him as the person who committed the offense.  The trial court denied all three motions in a single order.  Harris does not challenge the trial court’s ruling on this third motion to suppress. 

4:
The State relies on 
Simpson v. State
, 67 S.W.3d 327, 329 (Tex. App.—Texarkana 2001, no pet.), a case from our sister court holding that an open plea of guilty before a jury waives any error in the trial court’s denial of a motion to suppress where the judgment of guilt was independent of any alleged error in the trial court’s ruling.  For reasons discussed below, we hold that the trial court did not err by denying Harris’s motions to suppress and, therefore, we do not address whether Harris waived this issue.  
See 
Tex. R. App. P.
 47.1.

5:
We do note, however, that the record reflects numerous 
Miranda
 warnings given to Harris before he made his post-arrest statements.  The record also reflects that Harris gave law enforcement consent to search his vehicle both orally and in writing on two occasions.  At the suppression hearing, even the  trial judge noted that “I will say I don’t know if I’ve ever seen a case where Mr. Harris was warned of his rights so much by so many different people in so many different forms.  I think this is all good.”