# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00629-CR

**Darryl Winslow Calvin, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR-09-0540, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Darryl Winslow Calvin of indecency with a child and of attempted aggravated sexual assault of a child. The jury assessed sentence at fifteen years and eighteen years respectively for these offenses, with the sentences to run concurrently. Appellant contends on appeal that the trial court erred by admitting evidence of an extraneous offense, by excluding evidence he contends shows that the victim's mother understated her number of prior incarcerations, by denying his motion for mistrial after the prosecutor made remarks that appellant contends comment on his failure to testify, and by overruling his motion for directed verdict on the charge of aggravated sexual assault of a child. We will affirm the judgment.

## BACKGROUND

Appellant does not challenge the sufficiency of the evidence to support the jury's verdict, but a review of key testimony provides context for the errors alleged. T.B., the victim,

was twelve years old at the time of trial. Although T.B. was uncertain of the exact date the incident occurred, testimony tied it to the summer of 2007, at which time he was ten years old. T.B.'s mother, Jean, was in a long-term relationship with appellant's brother, Ervin Calvin. Jean and T.B. often spent the night with Ervin and his teenaged children. Appellant was also staying at Ervin's house at that time. The witnesses who lived in the house at that time testified that the kids typically stayed up late (until around 4 a.m.) watching television or playing video games in the living room. Ervin's daughter typically slept in her bedroom, and Ervin slept in another bedroom that adjoined the living room where the incident occurred.

T.B. testified that, at the time of the incident, Ervin's daughter, appellant, and Ervin were asleep in their respective bedrooms. T.B. testified that he was asleep in the living room with Ervin's son and appellant's son. T.B. said he was sleeping in a rocking recliner chair and the other boys were sleeping on separate couches. T.B. testified that appellant woke him up in the middle of the night and asked him to do "sexual stuff." T.B. testified that, in compliance with appellant's request, he "shook" appellant's penis up and down, then complied with appellant's request that he turn around and pull down his pants and underwear. T.B. testified that appellant pulled down his own pants and that appellant's penis touched T.B.'s left buttock, although T.B. later testified that it might have been appellant's hand rather than his penis. T.B. testified that he turned around to tell appellant to stop, at which point appellant's penis brushed T.B.'s thigh. T.B. testified that he tried to hit appellant and told appellant, "Get away from me." T.B. testified that appellant whispered to T.B. not to tell anyone about what had happened and returned to his room. T.B. testified that nobody else woke up and that he went back to sleep. He did not tell anyone what happened right away, but

2

said that he told his mother within days of the incident. T.B. testified that, by the time they went to the police "about a month later," he had forgotten what had happened. On cross-examination, T.B. admitted to some exaggeration when he related the incident to a child advocacy interviewer. These exaggerations included T.B. saying that he had yelled at and hit appellant. T.B. said that he got carried away during the interview due to the effects of a then-new hyperactivity medication.

T.B.'s mother Jean testified that T.B. told her in October 2007 about the incident after attending a discussion at Big Brothers/Big Sisters about what sort of touching between mentors and children was permissible. He told her the incident had happened three or four months earlier. The version Jean related at trial differed in some details from T.B.'s testimony—for example, T.B. told her that appellant had pulled down both their pants. Jean, a certified nurse's assistant, testified that she did not take T.B. to the doctor given that there had been no penetration and too much time had passed for collection of useful evidence. She testified that she had known T.B. to lie on occasion, but more when he was younger. She also testified that Ervin snores heavily and sleeps heavily with the door closed. Jean testified that she had been incarcerated twice for multiple instances of issuing bad checks and theft by check.

Detective Jacob Luria testified next, with much of the cross examination devoted to exploring the scope of his investigation. Luria watched as T.B. was interviewed by Melissa Rodriguez, the program director and a forensic interviewer at the child abuse program of the Hays/Caldwell County Women's Center. According to Luria, T.B. stated that appellant tried to "stick his penis in there" and that T.B. stated that he yelled when the attempted assault occurred. The court later played the videotape of Rodriguez's interview of T.B. Luria interviewed appellant,

3

who denied committing any crime, and the two boys who were in the living room with T.B. Luria agreed on cross-examination that the two other boys disputed essentially every aspect of T.B.'s report. One of the boys told Luria that the three boys never slept in the same room because T.B. annoyed the other boy. Luria did not personally interview anyone else who was in the house at the time of the incident, but another officer interviewed Jean. Luria conceded that no witness he interviewed supported T.B.'s accusation.

On the second day of trial, the State offered testimony regarding an alleged previous bad act by appellant. The State recalled Luria to testify that he talked with and received an email from A.C., appellant's niece, who alleged that appellant engaged in similar behavior with her once when she was twelve years old. Now twenty-seven years old, A.C. testified that while she was sleeping on the floor in a room of appellant's house with other children, she awakened to find appellant lying behind her, naked and sweating, pulling close to her and rubbing his penis into her back. A.C. testified that, having then recently been a victim of sexual abuse, she realized what was happening, told appellant "no," and left the room. Appellant told her to be quiet and not to tell anyone and went to his bedroom. Shortly thereafter, appellant and his wife emerged from their bedroom clothed and A.C. requested that her aunt take her home, but her aunt had appellant drive her home. Instead of taking her to her parents' home, appellant took her to a cemetery. When she asked to be taken home, appellant reached toward his glove compartment. A.C. testified that she was alarmed because she knew that appellant kept a gun in his glove compartment. She fled the car and hid until appellant told her "Fine. I'll take you home." When she returned to the car, she noticed that a gun was then on the front seat. After appellant drove her home, she told her parents about the

4

incident, but they did not report it to any governmental authority. On cross-examination, appellant attempted to undercut A.C.'s credibility by noting that she had accused several members of the family of sexual abuse without reporting them to governmental authorities.

After A.C.'s testimony, the State rested its case and reiterated its abandonment of the aggravated sexual assault count of the indictment that alleged penetration. The court denied appellant's motion for directed verdict on the count of the indictment alleging penile-anal contact.

During the defense case, others who were in the house at the time of the incident disputed T.B.'s story. Ervin testified that he would have awakened if anyone had screamed in the living room next to his room. He also disputed T.B.'s allegation of sexual contact, testifying that T.B. told him that T.B. stopped appellant before any improper contact occurred. The other younger family members who were sleeping in the house when T.B. said the incident occurred all testified that T.B. had a bad reputation for truthfulness. They disputed T.B.'s story that the three boys were asleep in the living room at the same time. One boy testified that the living room would have been too crowded with the three boys and that he did not like sleeping near T.B. That witness flatly denied that the three boys ever slept in the living room together, though he had told Detective Luria that it was possible. He also testified that he had no reason to believe that T.B. was sexually assaulted in the house. The other boy, appellant's son, demonstrated the logistical difficulties with T.B.'s version of events. None of the teenagers recalled hearing T.B. scream in the middle of the night. Ervin's daughter testified that appellant's door squeaked loudly and she did not recall hearing it squeak open followed by a scream from T.B. in the middle of the night in the summer of 2007.

The court's charge inquired about three offenses: aggravated sexual assault by contact, the lesser included offense of attempted aggravated sexual assault by contact, and one count

5

of indecency by contact. The jury acquitted appellant of assault by contact, but convicted him of attempted assault by contact and indecency by contact.

## ANALYSIS

Appellant contends on appeal that the trial court improperly admitted evidence of his extraneous acts, excluded documentary and testimonial evidence that a witness had been incarcerated more times than she admitted, denied his motion for mistrial for comment on his failure to testify, and overruled his motion for directed verdict on the charge of assault by contact.

### Admission of Extraneous Offense Evidence

Appellant contends that the trial court's admission of A.C.'s testimony regarding appellant's prior bad acts violated rule of evidence 404(b). Evidence of extraneous crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with that character. Tex. R. Evid. 404(b). Evidence of extraneous offenses can be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. *Id*. This list of permissible purposes is illustrative, not exhaustive. *Daggett v. State*, 187 S.W.3d 444, 451 n.13 (Tex. Crim. App. 2005). The admissibility of such evidence to show lack of opportunity has also been interpreted to permit the admission of such evidence to show impossibility of the offense. *See Wheeler v. State*, 67 S.W.3d 879, 887 n.21 (Tex. Crim. App. 2002). We review a trial court's ruling on the admissibility of extraneous offenses under an abuse of discretion standard. *Page v. State*, 137 S.W.3d 75, 78 (Tex. Crim. App. 2004). Trial courts may admit extraneous offense evidence to rebut evidence supporting defensive theories elicited in opening statements and cross-examination. *Powell v. State*, 63 S.W.3d 435, 439-40

6

(Tex. Crim. App. 2001). If the court's ruling was correct on any theory of law applicable to the case, in light of what was before the trial court at the time the ruling was made, we must uphold the judgment. *Sauceda v. State*, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004).

The extraneous offense evidence admitted in the trial court was admissible to rebut the defense's theory that appellant had no opportunity to commit the offense. Appellant argues on appeal that lack of opportunity was not raised in this case, but we conclude that it was raised at least implicitly by defense counsel and testimony. In his opening statement, defense counsel called T.B.'s version of events "an incredible story." Facets of the story defense counsel described as incredible include the assertion that the incident occurred with people nearby who heard nothing. Defense counsel elicited evidence consistent with this theory during cross-examination of T.B., setting up the proximity of the other boys and Ervin and the fact that they were not awakened by the incident. A.C.'s testimony that appellant had tried to sexually assault her in a similar fashion in a room with other children, without awakening anyone, rebutted the defensive theory that the presence of others denied appellant the opportunity to commit the offense. *See Powell*, 63 S.W.3d at 438. Because A.C.'s testimony about extraneous acts was relevant and admissible to rebut the defense's theory that appellant had no opportunity to commit the crime, the trial court did not abuse its discretion by admitting the evidence over appellant's rule 404(b) objection.[1]

---

[1] Appellant also objected at trial that the evidence should have been excluded because its probative value was substantially outweighed by the risk of unfair prejudice, confusion of the issues, or misleading of the jury. *See* Tex. R. Evid. 403. Although he mentions the rule 403 trial objection, he does not seem to raise the overruling of the rule 403 objection as an issue on appeal. In any event, we do not find that the trial court abused its discretion by overruling the rule 403 objection because the probative value of the evidence is not substantially outweighed by the risk of unfair prejudice, confusion of issues, or misleading of the jury.

**Exclusion of Impeachment Evidence**

Appellant next contends that the trial court erred by excluding jail records and related testimony showing Jean's criminal record of convictions for crimes of moral turpitude. Appellant sought to impeach Jean by showing that she had committed crimes of moral turpitude. *See* Tex. R. Evid. 609(a). He made an offer of proof of the Hays County jail records and the testimony of the custodian of those records. The custodian testified that the records showed that Jean was booked on June 7, 2004 for what the custodian described as "[m]ultiple issuances of a bad check . . . and capias pro fines of issuance of a bad check, multiples of those as well." Jean was released two days later after paying fines on some counts. The custodian testified that Jean was again booked on January 27, 2005 for "multiple capias pro fines of issuance of a bad check. . . . And then she was released to Guadalupe County to be housed there on March 16, 2005. . . . [T]hen she was brought back to Hays County on April 13th I believe for the same charges and then finally time served them on April 16th, 2005." When appellant's counsel asked the custodian about when the third booking occurred, the custodian responded, "That was the third." The State objected to this evidence on grounds that it was cumulative of Jean's admission that she had been jailed twice, that it violated rule 403 (which permits exclusion of cumulative evidence in the proper circumstances), and that it was not admissible because the convictions did not concern crimes of moral turpitude. The trial court sustained the objection without stating a basis.

On appeal, the parties focus on whether the evidence was admissible impeachment evidence turning upon the question of whether issuing bad checks is a crime of moral turpitude. We need not resolve that issue, however, because we conclude that the evidence was excludable as cumulative of Jean's testimony admitting the offenses. "Although relevant, evidence may be

8

excluded if its probative value is substantially outweighed by . . . considerations of . . . needless presentation of cumulative evidence." *See* Tex. R. Evid. 403. The jury had heard Jean testify that she had been jailed twice for what she agreed were a "laundry list" of "multiple" offenses of "theft by check and issuance of [a] bad check." Thus, the damage to her credibility that appellant desired was inflicted by her own testimony. The jail records were entirely cumulative on the issue of whether Jean had committed and been jailed for several offenses involving bad checks. The only substantive discrepancy between her testimony and the jail records is whether she was jailed twice or three times, a subject open to some interpretation based on the evidence that is at most tenuously related to whether appellant committed the offenses at hand.[2] The court did not err by excluding the jail records and the custodian's testimony.

**Denial of Motion for Mistrial Arising Out of Prosecutor's Argument**

Appellant next contends that the trial court erred by denying his motion for a mistrial at the punishment phase after the prosecutor made statements in argument that appellant alleges

---

[2] The custodian of records said that Jean's second and third bookings into Hays County Jail bookended a stint in Guadalupe County jail. Thus, Jean (and the trial court) may plausibly have regarded the continuous incarceration encompassing the second and third bookings into Hays County jail as a single jailing. In that case, she was "jailed" only twice, and the jail records were cumulative of the substance of her testimony. Even if we were to find that the purported discrepancy in number of jailings made the evidence non-cumulative and justified admitting the jail records evidence to impeach Jean, we would conclude that its exclusion was harmless. To merit reversal, the exclusion of the evidence must have either deprived him of his constitutional rights or affected his substantial rights. *See* Tex. R. App. P. 44.2. Erroneous evidentiary rulings rarely rise to the level of denying fundamental constitutional rights, *see Potier v. State*, 68 S.W.3d 657, 663 (Tex. Crim. App. 2002), and there is no showing that such occurred here. We further conclude based on the record and arguments before us that the exclusion of jail records from Hays County jail did not influence the jury or have more than a slight effect. *See Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

commented on his failure to testify. Both the federal and state constitutions preserve criminal defendants' right not to be compelled to give evidence against themselves. U.S. Const. amend. V; Tex. Const. art. I, § 10; *see also* Tex. Code Crim. Proc. Ann. art. 38.08 (West 2005) ("[T]he failure of any defendant to so testify shall not be taken as a circumstance against him, *nor shall the same be alluded to or commented on by counsel in the cause*." (emphasis added)). The court of criminal appeals has established criteria for evaluating a comment on the right against self-incrimination:

> To violate the right against self-incrimination, the offending language must be viewed from the jury's standpoint and the implication that the comment referred to the defendant's failure to testify must be clear. It is not sufficient that the language might be construed as an implied or indirect allusion. The test is whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify. In applying this standard, the context in which the comment was made must be analyzed to determine whether the language used was of such character.

*Bustamante v. State*, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001) (reviewing trial judge's comment on the failure to testify) (notes and citations omitted). We review the trial court's denial of the motion for mistrial based on a prosecutor's impermissible comment on appellant's failure to testify for an abuse of discretion. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). We weigh three factors: (1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and (3) the certainty of punishment absent the misconduct (the strength of the evidence supporting the punishment). *Id*. at 700. Only in extreme circumstances, where prejudice is incurable, will a mistrial be required. *Id*. at 699 (citing *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004)).

10

The challenged argument in this case occurred in the prosecutor's opening argument after both sides rested at the punishment phase. Among the witnesses in the punishment phase was appellant's pastor, who testified regarding appellant's progress in the pastor's ministry. The pastor testified that appellant had a "repentant heart" and would benefit from continuing exposure to the program at the pastor's church. This exchange occurred at the outset of the State's opening argument:

> [Prosecutor]: A man who wants to repair and restore his life must have a repentant heart. And how do you have a repentant heart? You admit your transgressions.
>
> [Defense attorney]: Judge I'll object. That comments on his right not to testify.
>
> [Prosecutor]: Your Honor, I'm repeating the testimony of the pastor.
>
> THE COURT: Overruled.
>
> [Prosecutor]: You admit your transgressions. And, yet, the defendant stands before you today and scolds you for your verdict.
>
> [Defense attorney]: That's exactly what she's doing, Judge.
>
> THE COURT: Sustained.
>
> [Defense attorney]: She's commenting on his right not to testify.
>
> THE COURT: Do not refer in that fashion. Ladies and gentlemen of the jury, you're instructed to disregard Counsel's statements.

The court then denied appellant's motion for mistrial.

The prosecutor's comment did not constitute severe misconduct. She did not comment directly on appellant's failure to testify, nor is there any clear implication that the comment referred to the defendant's failure to testify. *See Bustamante*, 48 S.W.3d at 765. Unlike

in *Johnson v. State*, the prosecutor here did not refer to what the jury had not heard appellant say. *See* 611 S.W.2d 649, 649-50 (Tex. Crim. App. 1981). The prosecutor here stated that she was "repeating the pastor's testimony." The prosecutor's explanation and the context indicated that the comment was not manifestly intended as a comment on the defendant's failure to testify, nor was it of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify. *See Bustamante*, 48 S.W.3d at 765. The jury had heard the pastor's testimony regarding appellant's repentant heart, and the prosecutor's additional remark implying that appellant had not admitted his transgressions[3] was not a revelation to the jurors, as they had heard his plea of not guilty and the entire trial, which included testimony about appellant's denial of wrongdoing.

We further hold that the court's instruction to disregard the comment was effective. The court of criminal appeals has held that we presume that judicial admonishments to the jury are efficacious. *Bauder v. State*, 921 S.W.2d 696, 698 (Tex. Crim. App. 1996), *overruled on other grounds by Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex. Crim. App. 2007) (concerning double jeopardy). Only when it is apparent that an objectionable event at trial is so emotionally inflammatory that curative instructions are not likely to prevent the jury being unfairly prejudiced against the defendant may a motion for mistrial be granted. *Id*. The court of criminal appeals observed that the "presumption that an instruction [to disregard] generally will not cure comment on failure of the accused to testify . . . has been eroded to the point that it applies only to the most blatant examples. Otherwise, the Court has tended to find the instruction to have force." *Moore*

---

[3] The prosecutor never stated directly that appellant had not admitted his transgressions.

*v. State*, 999 S.W.2d 385, 405 (Tex. Crim. App. 1999) (quoting *Dinkins v. State*, 894 S.W.2d 330, 356 (Tex. Crim. App. 1995)). Given the mildness of any violation of appellant's right not to testify and the absence of evidence of any indication that the argument had a negative effect on appellant, we conclude that the trial court's succinct, global directive to disregard counsel's statements was sufficiently effective.

We further hold that the misconduct did not affect appellant's sentence. Despite the inconsistencies in T.B.'s versions of events, the attacks on his and his mother's credibility, and the denials that the incident occurred by other family members, the jury had already found appellant guilty of indecency with a child and attempted aggravated sexual assault before the prosecutor made the argument. The argument did not occur until the end of the punishment phase. The punishment assessed was on the high end of the range of punishment, but below the twenty-year maximum permitted under the charge. We conclude that a prosecutor's comment after the close of evidence at the punishment phase that appellant had not admitted his transgressions—a comment the jury was instructed to disregard—had no discernible effect on the punishment. We conclude that the trial court did not abuse its discretion by denying the motion for mistrial.

**Denial of Motion for Directed Verdict**

Appellant also contends that the trial court erred by overruling his motion for a directed verdict on count two of the indictment for aggravated sexual assault of a child by causing his penis to contact T.B.'s anus. Appellant's argument is unusual in that he perceives harm not from the denial itself but from an alleged collateral effect of the denial. Appellant moved for directed verdict on grounds that no evidence supported the indictment's allegation that his penis touched

13

T.B.'s anus. Appellant correctly notes that the error, if any, in denying the motion and submitting the aggravated sexual assault question to the jury was rendered moot with regard to the assault charge itself when the jury acquitted him on that count. Appellant contends, however, that the denial of the motion for directed verdict harmed him because the trial court submitted and the jury convicted him on the lesser included offense of attempted contact. He contends that, had the trial court properly granted his motion with regard to the greater offense, it could not have submitted the lesser included offense to the jury.

We disagree. The code of criminal procedure expressly provides that "[i]n a prosecution for an offense with lesser included offenses, the jury may find the defendant not guilty of the greater offense, but guilty of any lesser included offense." Tex. Code Crim. Proc. Ann. art. 37.08 (West 2006). The court of criminal appeals has noted that a prosecutor has the option of abandoning a charged offense in favor of its lesser included offense. *Grey v. State*, 298 S.W.3d 644, 651 (Tex. Crim. App. 2009). Appellant cites no authority for the proposition that a directed verdict against the greater offense precludes submission or conviction of a lesser included offense. If the prosecutor can abandon the greater offense and pursue the lesser included offense, we see no reason that the grant of a directed verdict against the greater offense would preclude submission or conviction of the lesser included offense. The assault by contact charge undisputedly has a lesser included offense of attempt. T.B.'s testimony supported submission to the jury of the lesser included offense of attempted aggravated sexual assault. Even if the trial court had granted the directed verdict on the offense charged, the State could have requested and the trial court could have submitted a charge on the lesser included offense. As such, any error in the failure to grant the

directed verdict did not make the submission of the lesser included offense erroneous. Appellant has not shown that the failure to grant the directed verdict on the greater offense harmed him.

**CONCLUSION**

Having resolved all issues raised on appeal in favor of the judgment, we affirm.

_____

Jeff Rose, Justice

Before Justices Puryear, Pemberton and Rose

Affirmed

Filed:   April 21, 2011

Do Not Publish